IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

AUG 1 5 2002

PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| JOHN DOE, JOHN DOE, SR. and JANE DOE, | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| FATHER ERIC ENSEY, FATHER CARLOS | : | |
| URRUTIGOITY, DIOCESE OF SCRANTON, | : | DOCKET NO. 3:CV-02-0444 |
| BISHOP JAMES C. TIMLIN, THE | : | |
| SOCIETY OF ST. JOHN, THE PRIESTLY | : | |
| FRATERNITY OF ST. PETER, and | : | |
| ST. GREGORY'S ACADEMY, | : | (VANASKIE, D.J.) |
| Defendants | : | (MANNION, M.J.) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DEFENDANTS' FATHER ERIC ENSEY, FATHER CARLOS URRUTIGOITY
AND THE SOCIETY OF ST. JOHN'S MOTION TO DISMISS ALL CLAIMS
ASSERTED BY PARENT PLAINTIFFS IN COUNTS I THROUGH VIII, AND
TO DISMISS PLAINTIFF JOHN DOE'S CLAIMS IN COUNTS VII AND
VIII OF PLAINTIFFS' COMPLAINT

AND NOW come the Defendants, Father Eric Ensey, Father

Carlos Urrutigoity and Society of St. John, by and through

their attorneys, FOLEY, COGNETTI, COMERFORD & CIMINI, and

hereby submit their Motion to Dismiss parent plaintiffs' Counts

I through VIII and John Doe's Counts VII and VIII of

Plaintiffs' Complaint in accordance with Federal Rule of Civil

Procedure 12(b)(6) and in support thereof aver the following:

1.    Plaintiffs, John Doe, John Doe, Sr. and Jane Doe filed

a Complaint against moving Defendants, and others on March 20,

2002.  (A copy of the Complaint is attached hereto as Exhibit

"A").

- 1 -

2.    Plaintiffs John Doe, Sr. and Jane Doe are the parents of Plaintiff John Doe.

3.    As plead in paragraph 3 of Plaintiffs' Complaint, Plaintiff John Doe was an adult at the time of the filing of said Complaint.

4.    In the Complaint, Plaintiffs, John Doe, John Doe, Sr., and Jane Doe assert claims for assault and battery (Count I), negligence (Counts II and III), agency (Count IV), intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count VI), invasion of privacy (Count VII) and breach of duty (Count VIII).

5.    The parent Plaintiffs, John Doe, Sr. and Jane Doe, have cited no facts that would support *their* claims for assault and battery, negligence, agency, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy and breach of duty and Defendants are therefore entitled to dismissal of all parent Plaintiffs' claims.

6.    Parent Plaintiffs, John Doe, Sr. and Jane Does' claims for intentional and negligent infliction of emotional distress are barred under Pennsylvania law on the grounds that the parent Plaintiffs were not present at the time of Defendants' alleged tortuous conduct took place and parent Plaintiffs suffered no physical harm or injury, thus barring parent Plaintiffs from stating a legally cognizable claim to recover damages for alleged emotional distress.

7.   Plaintiffs' claim for invasion of privacy is barred by the applicable one-year statute of limitations and Defendants are therefore entitled to a dismissal of Count VII.

8.   Plaintiffs' claim for breach of duty is not a claim recognized by the Pennsylvania courts.

WHEREFORE, Defendants, Father Eric Ensey, Father Carlos Urrutigoity and the Society of St. John request that this Court dismiss, with prejudice, parent Plaintiffs, John Doe, Sr. and Jane Does' claims under Counts I, II, III, IV, V, VI, VII and VIII of the Complaint, as well as Plaintiff John Doe's Count VII and VIII, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

FOLEY, COGNETTI, COMERFORD
& CIMINI

BY: _Vincent S. Cimini_
VINCENT S. CIMINI, ESQ.
SAL COGNETTI, JR., ESQ.
ATTORNEYS FOR DEFENDANTS
FATHER ERIC ENSEY, FATHER CARLOS
URRUTIGOITY AND
SOCIETY OF ST. JOHN

507 Linden Street
Suite 700
Scranton, PA  18503
(570) 346-0745

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MOTION TO DISMISS was served upon counsel of record and unrepresented parties herein by first class, United States mail, postage prepaid, on the 15th day of August, 2002 in the instant action addressed as follows:

James Bendell, Esq.
P. O. Box 587
2535 Ivy Street
Port Townsend, WA   98368

Douglas A. Clark, Esq.
The Ritz Building
222 Wyoming Avenue
Scranton, PA   18503
(Counsel for Plaintiffs)

Joseph O'Brien, Esq.
OLIVER, PRICE & RHOADES
1212 S. Abington Road
P. O. Box 240
Clarks Summit, PA   18411
And
James O'Brien, Esq.
538 Spruce Street, Suite 504
Scranton, PA   18503
(Both are counsel for
Diocese of Scranton
And
Bishop James C. Timlin)

Joseph F. Leeson, Jr., Esq.
LEESON & LEESON
70 East Broad Street
P. O. Box 1426
Bethlehem, PA   18016
(Counsel for Priestly Fraternity of Saint Peter
and Saint Gregory's Academy)

FOLEY, COGNETTI, COMERFORD
& CIMINI

BY: _____
VINCENT S. CIMINI, ESQ.

- 4 -

507 Linden Street
700 Scranton Electric Bldg.
Scranton, PA    18503
570-346-0745

CERTIFICATE   OF   NONCONCURRENCE

I hereby certify that I have contacted Douglas Clark, Esquire, attorney for Plaintiff herein, and he does not concur in the within Motion.

FOLEY, COGNETTI, COMERFORD
& CIMINI

BY: _____
VINCENT S. CIMINI, ESQ.

COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3: CV 02-0444

FILED
SCRANTON

MAR 2 0 2002

JOHN DOE, JOHN DOE, SR. and
JANE DOE,

              Plaintiffs

    vs.

FATHER ERIC ENSEY, FATHER CARLOS
URRUTIGOITY, DIOCESE OF SCRANTON,
BISHOP JAMES C. TIMLIN, THE
SOCIETY OF ST. JOHN, THE PRIESTLY
FRATERNITY OF ST. PETER, and
ST. GREGORY'S ACADEMY,

              Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:

No.

JUDGE

DEPUTY CLERK

JURY TRIAL DEMANDED

## C O M P L A I N T

NOW COME the Plaintiffs, John Doe, John Doe, Sr., and Jane
Doe, by and through counsel, James M. Bendell, Esquire and Douglas
Clark, Esquire, and hereby complains of the above-named Defendants
as follows:

### I.  JURISDICTION

1.  The United States District Court for the Middle District
of Pennsylvania has subject matter jurisdiction over this diversity
claim brought forth by the Plaintiffs arising under Pennsylvania
state law inasmuch as the Plaintiff is a non-resident of the
Commonwealth of Pennsylvania and the Defendants and corpora

EXHIBIT "A"

entities are Pennsylvania residents.   In addition, the amount in controversy here exceeds the sum of $75,000.00.

## II.   VENUE

2.   The United States District Court for the Middle District of Pennsylvania is the proper venue for this action since all of the complained of actions occurred within this District.

## III.   PARTIES

3.   Plaintiff, John Doe, is presently an adult and competent individual who resides in the State of North Carolina.   At certain relevant times herein, the Plaintiff was a minor.   Plaintiffs, John Doe, Sr. and Jane Doe, were at all times mentioned in this Complaint, residents of the State of North Carolina and the parents of the minor Plaintiff, John Doe.

4.   The Defendant, Father Eric Ensey, is an adult and competent individual who at all relevant times herein was a member of the Society of Saint John, a clerical association of the Diocese of Scranton and who at certain material times herein resided at property owned by the Society of Saint John in Shohola, Pike County, Pennsylvania and at St. Gregory's Academy in Moscow,

Lackawanna County, Pennsylvania.

5. Father Carlos Urrutigoity is an adult and competent individual who is the principal founder and current Superior General of the Society of Saint John and who at certain material times herein resided at property owned by the Society of Saint John in Shohola, Pike County, Pennsylvania and at St. Gregory's Academy in Moscow, Lackawanna County, Pennsylvania.

6. The Defendant, Diocese of Scranton, is, and was at all times mentioned in the Complaint, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 300 Wyoming Avenue, Scranton, Lackawanna County, Pennsylvania.

7. The Most Reverend James C. Timlin is an adult and competent individual, who at all times mentioned herein was the Bishop of the Diocese of Scranton.

8. The Society of Saint John is a diocesan clerical association of the Diocese of Scranton.

9. The Priestly Fraternity of Saint Peter is a pontifical clerical association whose North American Headquarters are located in Moscow, Lackawanna County, Pennsylvania.

10. Saint Gregory's Academy, owned and operated by the

Priestly Fraternity of St. Peter, is all boys High School located
on property owned by the Diocese of Scranton in Moscow, Lackawanna
County, Pennsylavania.

IV.  **FACTUAL BACKGROUND APPLICABLE TO ALL CLAIMS**

11.   The Society of Saint John is a diocesan clerical
association of the Diocese of Scranton.

12.   The ordinary Diocese and Bishop of Scranton, the Most
Reverend James C. Timlin, has an obligation of law of vigilance in
regard to the Society, as a clerical association of the Diocese of
Scranton, and a responsibility for the integrity of the Society's
faith, morals and the proper administration of goods in the
Society's possession.

13.  Clerical members of the Society, priests and deacons, are
incardinated in the Diocese of Scranton subject to the jurisdiction
of the Bishop of Scranton.  Prior to incardination, Bishop James C.
Timlin is required to have "appropriate testimonials, concerning
the clerics life, morals and studies."  Code of Canon Law of the
Catholic Church.

14.   As incardinated clerics of the Diocese of Scranton, the
clerical members of the Society of St. John are no more than

-4-

diocesan priests with permission to live together according to a rule of life and in order to carry out a certain apostolic mission. The Diocese and Bishop have the authority and power to suppress the Society at any time for a cause.

15. The Reverend Carlos Urrutigoity, principal founder and current Superior General of the Society, prior to being received into the Diocese of Scranton, was an irregular cleric and member of a clerical society, the Society of Saint Pius X, founded by the late Archbishop Marcel Lefebvre. Reverend Urrutigoity was validly ordained to the priesthood by Bishop Williamson, a Bishop of the Society of Saint Pius X, in Winona, Minnesota.

16. Prior to being incardinated in the Diocese of Scranton, an incident of homosexual molestation took place between Father Urrutigoity and a former seminarian.

17. Father Urrutigoity taught at a seminary of La Reja (Society of Saint Pius X) in Argentina. While there, he came under a cloud of accusation of homosexuality. After Father Urrutigoity's departure from La Reja, Bishop Williamson brought him to the Pius X seminary in Winona, Minnesota with permission and warning from Archbishop Lefebvre that Urrutigoity was to be monitored.

18. In the early 1990s, Bishop Williamson ordained

Urrutigoity to the priesthood and afterward named him Professor of the Seminary in Winona, Minnesota.. While teaching at the Seminary, Urrutigoity cultivated a certain following and began to develop his vision, which became the Society of Saint John, to wit, a Catholic village, plus an educational system and high Latin liturgy.

19. After subversive activity, Urrutigoity was dismissed by Bishop Williamson from the Seminary. He departed Winona, Minnesota with some followers.

20. Father Urrutigoity and associates, under no ecclesiastical jurisdiction, wandered from place to place as guests of owners of private residences. Eventually, they realized they were in an irregular situation and must find a home in and under a regular diocese.

21. In the Fall 1997, Father Urrutigoity and his followers, clerics and seminarians, were accepted into the Diocese of Scranton by Bishop Timlin. The Diocese of Scranton, at this early stage, gave the Society canonical recognition. (Recognitio.)

22. Due to the fact that Urrutigoity came from the Society of Saint Pius X, Bishop Timlin arranged, with the cooperation of the Fraternity of Saint Peter, to have Urrutigoity and his associates

temporarily lodged in the wing of the diocesean  building in
Moscow, Lackawanna County, Pennsylvania, which houses the
headquarters of the Fraternity and its Boy's School,  Saint
Gregory's Academy.

23.   The Fraternity was founded in 1988 by the former members
of the Society of Saint Pius X, who left the Society after
Archbishop Lefebvre consecrated four Bishops, including Williamson,
without permission from the Holy See.

24.   The Fraternity has legitimate chapels on the property of
Saint Gregory's Academy as well as throughout the United States and
in ·other countries.   Like the Society of Saint John's, the
Fraternity of Peter has permission for the exclusive celebration of
the pre-conciliar Latin mass.   Unlike the Society, the Fraternity
is a pontifical organization directly under the authority of the
Pope, although no Bishop is required to let them into his Diocese.
Conversely, the Society of Saint John answers directly to Bishop
Timlin and the Diocese of Scranton.

25.   On May 24, 1998, Bishop Timlin canonically erected the
Society of Saint John making it a public clerical association of
the Diocese of Scranton.

26.   In October, 1998, Bishop Timlin ordained two Society

members of the priesthood: Father Basil Sarweh and Father Dominic Carey.

27.   In July, 1999, Auxiliary Bishop John Dougherty, the Diocesan Vicar of Priests Kopacz, as well as a Diocesan attorney, were dispatched by the Diocese of Scranton to Minnesota, prompted by a letter from Bishop Fellay of the Society of Saint Pius X authored in February 1999, to hear personal testimony concerning the aforesaid homosexual molestation of a former Winona seminarian by Reverend Urrutigoity. Bishop Williamson of the Society of Saint Pius X was present during this testimony.

28.   Despite this evidence, the Diocese of Scranton, through Bishop Timlin, allowed the Society to continue on as chaplains at Saint Gregory's Academy surrounded by adolescent male students.

29.   Since the outset at their stay at Saint Gregory's, the Society of Saint John's members, Father Carlos Urrutigoity and Father Eric Ensey, cultivated intimate relationships with students of Saint Gregory's, plied minors at Saint Gregory's with alcohol, as well as sleeping with them.

30.   The Plaintiff, John Doe, a minor at the time, began to attend school at Saint Gregory's Academy at the commencement of 1995-96 academic year.

31. It was during the Fall of 1997, during the Plaintiff's junior year, the members of the Society of Saint John's arrived at Saint Gregory's Academy.

32. In September, 1999, the Society purchased property in Shohola, Pennsylvania.

33. The Society of Saint John purchased the property for 2.2 million dollars. Included on the property is a stone and wood frame country cottage, a wood frame hunting lodge and a stable later converted into a chapel. The Society used that property as well as a home adjacent to that property, now or formerly owned by the Sciambra family of Napa, California. Another property located on the adjacent side of Legislative Route 434 owned by Mrs. Shirley Kostiuc was utilized by the Society. The Sciambra family and Mrs. Kostiuc now, or have, evicted the Society from their premises.

### V. FIRST CAUSE OF ACTION - ASSAULT AND BATTERY

#### Plaintiffs' John Doe, John Doe, Sr. and Jane Doe vs. Father Eric Ensey and Father Carlos Urrutigoity

34. Paragraphs 1 through 33 are incorporated by reference as if fully set forth at length herein.

35. During the Plaintiff, John Doe's, minority, and while a

student at Saint Gregory's Academy, the Plaintiff was repeatedly provided alcohol and tobacco by the Defendant, Father Eric Ensey. Father Ensey had developed a unhealthy relationship with the Plaintiff, John Doe, under the guise of providing spiritual direction.

36. On several occasions during the Plaintiff's matriculation at Saint Gregory's, Defendant, Father Eric Ensey, without any encouragement or inducement by the Plaintiff, a minor at the time, coerced the Plaintiff, John Doe, into engaging in various homosexual acts with Father Ensey. This conduct by Father Ensey occurred not only while the Plaintiff was at Saint Gregory's but also during a visit to California to Father Ensey's family home during Thanksgiving 1998.

37. Subsequently, Father Ensey conveyed to the Plaintiff, John Doe, that he should begin receiving "spiritual direction" from the Defendant, Father Urrutigoity, rather than from Father Ensey and that Ensey and the Plaintiff should remain "very close friends".

38. In the Fall of 2000, while a postulant with the Society of Saint John, the Plaintiff, was requested to sleep in Father Ensey's bed but when Father Ensey began to attempt intimate

contact, the Plaintiff sought out other arrangements for sleeping from the Defendant, Father Urrutigoity.

39.   Father Urrutigoity informed the Plaintiff that the guest room at the house was reserved for very important visitors and that the Plaintiff should sleep with Father Urrutigoity. The Plaintiff did not suspect Father Urrutigoity of being capable of the same behavior as Father Ensey but after several nights of sleeping together in the same bed, Father Urrutigoity directed inappropriate homosexual contact to the Plaintiff.

40.   The Plaintiff began to seek other living arrangements and was finally given a bed in the stairwell at the Kostiuc property.

41.   As a direct and proximate result of the Defendant Ensey's and Urrutigoity's assault and battery as described above, the Plaintiff, John Doe, has suffered permanent, emotional and psychological injury, all to the Plaintiff's general damage in an amount in excess of $75,000.00.

42.   As a further direct and proximate result of the Defendant Ensey's and Urrutigoity's assault and battery as described above, John Doe, Sr. and Jane Doe, were required to expend monies for the medical care and treatment of the Plaintiff, John Doe's, emotional and psychological injuries, all to the Plaintiff's financial

detriment.

43.   Plaintiffs are informed and  believe, and based upon information and belief, alleges that the Plaintiffs, John Doe, Sr. and Jane Doe, as parents, will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by the Plaintiff, John Doe, the exact amount of which is unknown to the Plaintiff's parents at this time.

44.   Plaintiff, John Doe, is informed and believes, and based upon that information and belief, alleges that he will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by him, the exact amount of which is unknown to the Plaintiff, John Doe, at present.

45.   The acts of the Defendants Ensey and Urrutigoity, as alleged above, were done willfully, maliciously and in wanton disregard of the rights of the Plaintiff.  As a result, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

VI.   SECOND CAUSE OF ACTION - NEGLIGENCE

<u>Plaintiffs' John Doe, John Doe, Sr. and Jane Doe</u>
<u>vs. Bishop James C. Timlin, Diocese of Scranton and</u>
<u>the Society of St. John</u>

46.  Paragraphs 1 through 45 are incorporated by reference as if fully set forth at length herein.

47.  The Diocese of Scranton through Bishop James C. Timlin has an obligation of vigilance in regard to the Society as a clerical association of the Diocese.

48.  The Diocese can appoint a Trustee to direct the Society or suppress it.  During relevant times herein, the Diocese of Scranton appointed a special counsel headed by Auxiliary Bishop John M. Daugherty to oversee the troubled financial state of the Society.

49.  Beginning, at the very least in February, 1999, the Diocese of·Scranton, through Bishop James C. Timlin, was placed on notice of alleged homosexual behavior on behalf of members of the Society of Saint John.

50.  The Defendant, Diocese of Scranton, through Bishop James C. Timlin, knew, or in the exercise of reasonable care, should have known, that if the complaints were not properly investigated by the Diocese of Scranton, that the Defendants Ensey and Urrutigoity would continue to sexually molest young men at Saint Gregory's,

such as the Plaintiff, John Doe.

51. Defendants, Bishop James C. Timlin, Diocese of Scranton, and the Society of St. John, in breach of their duties and obligations concerning the matters alleged in this Complaint, negligently and carelessly:

    (a)   failed to advise parents of children enrolled at Saint Gregory's Academy that complaints had been made to the Diocese of Scranton that the Defendants Ensey and Urrutigoity were probably engaging in homosexual act with a student or students at the Academy;

    (b)   failed to properly investigate the complaints that the Defendants Ensey and Urrutigoity were probably engaging in homosexual acts with a student or students at the Academy;

    (c)   failed to follow the canonical standards adopted by the Catholic Church concerning the members of the Society of Saint John;

    (d)   failed to suspend the Defendants Ensey and Urrutigoity pending a complete investigation;

    (e)   failed to terminate Ensey and Urrutigoity as

diocesan priest;

(f) granted recognition to the Society of Saint John after the Diocese of Scranton or, in the exercise of reasonable care, should have known, that members of the Society, including its Superior General, had a history of homosexual molestation;

(g) failed to fully, timely and completely report to law enforcement agencies relative to the complaints received concerning Defendants Ensey and Urrutigoity; and

(h) failed to otherwise act with due care.

52. As a direct and proximate result of the Defendants Diocese of Scranton, Bishop Timlin's, and the Society of St. John's negligence, as described above, Defendants Ensey and Urrutigoity were permitted to continue residing at Saint Gregory's Academy as well as engaging in homosexual molestation at the Pike County property, thus allowing the Defendants Ensey and Urrutigoity to continue to sexually abuse the Plaintiff, John Doe.

53. As a further direct and proximate result of the Defendants' negligence as described above, Plaintiff, John Doe, has suffered permanent, emotional and psychological injury, all to his

detriment and loss.

54. As a further direct and proximate result of the Defendants' negligence as described above, the Plaintiffs, John Doe, Sr. and Jane Doe, were required to expend monies for the medical and psychological care and treatment of the Plaintiff, John Doe's, emotional and psychological injuries, all to their great financial detriment and loss.

55. Plaintiffs, John Doe, Sr. and Jane Doe, are informed and believe, and based upon that information and belief, allege that they will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by their son, the minor Plaintiff, John Doe, the exact amount of which is unknown to the Plaintiff parents at this time.

56. As a further direct and proximate result of the Defendant Diocese of Scranton's and Bishop James C. Timlin's negligence as described above, the Plaintiff, John Doe, based upon information and belief, believes that he will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by him, the exact amount of which is unknown to the Plaintiff, John Doe, at this time.

57. The acts of the Defendants, Diocese of Scranton and

Bishop James C. Timlin, as alleged above, were done willfully, maliciously and in wanton disregard of the rights of the Plaintiff. As a result, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

### VII.   THIRD CAUSE OF ACTION - NEGLIGENCE

### Plaintiffs' John Doe, John Doe, Sr. and Jane Does vs. Fraternity of St. Peter and St. Gregory's Academy

58.   Paragraphs 1 through 57 are incorporated by reference as if fully set forth at length herein.

59.   The Fraternity of St. Peter has an obligation of vigilance in regard to the activities at St. Gregory's Academy.

60.   Beginning at the very least in February, 1999, homosexual behavior was occurring at St. Gregory's Academy as set forth above.

61.   The Fraternity of St. Peter knew, or in the exercise of reasonable care, should have known, that physical assaults were occurring at St. Gregory's Academy against young men, including the minor plaintiff.

62.   Defendants, Fraternity of St. Peter and St. Gregory's Academy, in breach of their duties and obligations concerning the

-17-

matters alleged in this Complaint, negligently and carelessly:

      (a)   failed to advise parents of children enrolled at Saint Gregory's Academy that complaints had been made to the Diocese of Scranton that the Defendants Ensey and Urrutigoity were probably engaging in homosexual act with a student or students at the Academy;

      (b)   failed to properly investigate the complaints that the Defendants Ensey and Urrutigoity were probably engaging in homosexual acts with a student or students at the Academy;

      (c)   failed to follow the canonical standards adopted by the Catholic Church concerning the members of the Society of Saint John;

      (d)   failed to fully, timely and completely report to law enforcement agencies relative to the complaints received concerning Defendants Ensey and Urrutigoity; and

      (e)   failed to otherwise act with due care.

    63.   As a direct and proximate result of the Defendants' negligence, as described above, Defendants Ensey and Urrutigoity

were permitted to continue residing at Saint Gregory's Academy as well as engaging in homosexual molestation at the Pike County property, thus allowing the Defendants Ensey and Urrutigoity to continue to sexually abuse the Plaintiff, John Doe.

64.   As a further direct and proximate result of the Defendants' negligence as described above, Plaintiff, John Doe, has suffered permanent, emotional and psychological injury, all to his detriment and loss.

65.   As a further direct and proximate result of the Defendants' negligence as described above, the Plaintiffs, John Doe, Sr. and Jane Doe, were required to expend monies for the medical and psychological care and treatment of the Plaintiff, John Doe's, emotional and psychological injuries, all to their great financial detriment and loss.

66.   Plaintiffs, John Doe, Sr. and Jane Doe, are informed and believe, and based upon that information and belief, allege that they will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by their son, the minor Plaintiff, John Doe, the exact amount of which is unknown to the Plaintiff parents at this time.

67.   As a further direct and proximate result of the

Defendants' negligence as described above, the Plaintiff, John Doe, based upon information and belief, believes that he will be required to expend additional sums for further medical care and treatment of the emotional and psychological injuries suffered by him, the exact amount of which is unknown to the Plaintiff, John Doe, at this time.

68.   The acts of the Defendants, as alleged above, were done willfully, maliciously and in wanton disregard of the rights of the Plaintiff.   As a result, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

### VIII.   FOURTH CAUSE OF ACTION - AGENCY

69.   Paragraphs 1 through 68 are incorporated by reference as if fully set forth at length herein.

70.   The Catholic Church requires that each Diocese investigate complaints of homosexual behavior against a member of the clergy who is morally unfit and does not meet the standards the Catholic Church requires.

71.   The investigation, suspension or termination of the Defendants Ensey and Urrutigoity would have been in furtherance of

the standards of the Catholic Church.

72. For purposes of restricting Defendants Ensey and Urrutigoity and investigating the complaints that the Defendants Ensey and Urrutigoity were engaged in homosexual acts with a student or students of the Academy, Defendants, Society of Saint John, Father Eric Ensey and Father Carlos Urrutigoity, acted as the agent of the Defendant, Diocese of Scranton.

73. As a direct and proximate result of the agency alleged above, Defendant, Diocese of Scranton, is liable for the acts of the Defendants Ensey and Urrutigoity.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

IX.   FIFTH CAUSE OF ACTION - INTENTIONAL INFLICTION

OF EMOTIONAL DISTRESS

Plaintiffs, John Doe, John Doe, Sr. and Jane Doe,
vs. All Defendants

74. Paragraphs 1 through 73 are incorporated by reference as if fully set forth at length herein.

75. Defendant knew, or in the exercise of reasonable care should have known, that his sexual assaults and battery and abuse of Plaintiff would result in serious emotional distress to the

Plaintiff.

76. In doing the acts alleged above, Defendants acted with willful, wanton, reckless, intentional and deliberate disregard for the likelihood that Plaintiff would suffer severe emotional distress as a direct and proximate result of the sexual abuse of Plaintiff.

77. Defendant's conduct as alleged above was extreme and outrageous, and went beyond all bounds of decency.

78. As a direct and proximate result of Defendant's wrongful actions and sexual assaults and battery and abuse as described above, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

## X.  SIXTH CAUSE OF ACTION - NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS
### Plaintiffs, John Doe, John Doe, Sr. and Jane Doe,
### vs. All Defendants

79. Paragraphs 1 through 78 are incorporated by reference as if fully set forth at length herein.

80. Defendant knew, or in the exercise or reasonable care

should have known, that his sexual assaults and battery and abuse of Plaintiff would result in serious emotional distress to the Plaintiff.

81. Defendant, as Plaintiff John Doe's advisor and spiritural counselor, and in whom was placed Plaintiff's confidence and trust, owed a duty to Plaintiff to refrain from sexually assaulting and abusing Plaintiff.

82. Defendant negligently and carelessly breached the duty described above by negligently and carelessly engaging in acts of sexual assault, battery and abuse with Plaintiff in disregard for the likelihood that Plaintiff would suffer severe emotional distress as a direct and proximate result of the sexual abuse of Plaintiff.

83. Defendant's conduct as alleged above was extreme and outrageous, and went beyond all bounds of decency.

84. As a direct and proximate result of Defendant's negligence and carelessness as described above, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

## XI. <u>SEVENTH CAUSE OF ACTION - INVASION OF PRIVACY</u>

### <u>Plaintiffs, John Doe, John Doe, Sr. and Jane Doe vs. Father Eric Ensey and Father Carlos Urrutigoity</u>

85.  Paragraphs 1 through 84 are incorporated by reference as if fully set forth at length herein.

86.  Defendant's wrongful actions and sexual assault and battery and abuse of the Plaintiff as described above were an invasion of the Plaintiff's privacy and were done in malicious and wanton disregard of the Plaintiff's feelings, character and reputation.

87. As a direct and proximate result of Defendant's invasion of Plaintiff's privacy as described above, Plaintiff suffered embarrassment, public ridicule, humiliation and mental pain and anguish.

WHEREFORE, Plaintiff requests judgment against Defendant as set forth below.

## XII. <u>EIGHTH CAUSE OF ACTION - BREACH OF DUTY (IN LOCO PARENTIS)</u>

### <u>Plaintiffs, John Doe, John Doe, Sr. and Jane Doe vs. All Defendants</u>

88.  Plaintiff incorporates Paragraphs 1 through 87 of this Complaint as if set forth in full here.

-24-

89.    Defendant, acting in loco parentis, and in whom was placed Plaintiff's confident and trust, owed a duty to Plaintiff to take care of, and act in the best interest of Plaintiff.

90.    Defendant breached the duty he owed to Plaintiff by engaging in wrongful acts and sexual assaults, battery, and abuse of Plaintiff as described above.

WHEREFORE, Plaintiff requests judgment against the Defendants, jointly and severally:

(1)    In an amount in excess of Seventy Five Thousand ($75,000.00) Dollars compensatory damages;

(2)    In the amount of One Million ($1,000,000.00) Dollars as punitive damages;

(3)    Awarding Plaintiff the costs of this action; and

(4)    Granting Plaintiff such as other and further relief as the Court deems just and proper.

Respectfully submitted,

JAMES M. BENDELL
P.O. Box 587
Port Townsend, WA 98368

DOUGLAS A. CLARK
716 Adele Drive
Peckville, PA 18452

-25-