## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE, JOHN DOE, SR. and
JANE DOE,

             Plaintiffs

             v.

FATHER ERIC ENSEY, ET AL.,

             Defendants

:
:
:
:
:
:
:
:
:
:
:

No. 3: CV 02-0444
(Judge Jones)

## MEMORANDUM AND ORDER

### March 23, 2004

Pending before this Court is Plaintiff's Motion to Compel Production of Psychological and Psychiatric Records and Evaluations of Defendant Fathers Ensey and Urrutigoity (hereinafter "Defendant Priests" or "Frs. Ensey and Urrutigoity"). We have reviewed the submissions of the parties and taken into consideration the presentations made at oral argument on January 27, 2004. For the reasons set forth below, we will grant Plaintiff's Motion subject to certain strict limitations.

## PROCEDURAL HISTORY

John Doe and his parents John Sr. and Jane Doe (hereinafter collectively

"Plaintiffs"), commenced this action by filing a Complaint on March 20, 2002

against the Defendant Priests, the Bishop of Scranton, James C. Timlin, the Diocese

of Scranton, the Society of St. John, the Priestly Fraternity of St. Peter, and St.

Gregory's Academy (hereinafter collectively "Defendants"), all domiciled in

Pennsylvania.  The Plaintiffs claim that while John Doe was a minor and student at

Saint Gregory's Academy he was sexually molested.   Plaintiffs' Complaint alleged

the following state law claims: Assault and Battery (Count I); Negligence (Counts

II and III); Agency (Count IV); Intentional and Negligent Infliction of Emotional

Distress (Counts V and VI); Invasion of Privacy (Count VII); and Breach of Duty

(Count VIII).  We have jurisdiction pursuant to 28 U.S.C. 1331, as Plaintiff John

Doe, now an adult, resides in North Carolina.

By Order of December 18, 2002, we referred this case to Magistrate Judge J.

Andrew Smyser for pretrial proceedings.  On January 13, 2003, Magistrate Judge

Smyser issued a Report and Recommendation denying in part Defendants Frs.

Ensey's and Urrutigoity's, and the Society of St. John's collective Motion to

Dismiss (doc.13).  By Order of February 4, 2003, we adopted the Magistrate

Judge's Report and Recommendation in toto, dismissing Count VII as outside the

statute of limitations and Count VIII as subsumed by other counts.

On November 3, 2003, Plaintiffs filed the instant Motion to Compel

Production of the Psychological and Psychiatric Records and Evaluations of Frs.

Urrutigoity and Ensey.

## FACTUAL BACKGROUND

Plaintiff John Doe was a student at Saint Gregory's Academy in 1997.  St.

Gregory's is a boy's school, located on Diocese of Scranton property, and owned

and operated by the Fraternity of St. Peter, a pontifical clerical association

associated with the Diocese.  Frs. Ensey and Urrutigoity are members of the Society

of St. John, a diocesan clerical association of the Diocese of Scranton that is housed

in the same building as St. Gregory's.  Both priests served as chaplains at the

Academy.  Plaintiffs allege that throughout the 1997-1998 academic year, John Doe

was sexually molested repeatedly by Frs. Ensey and Urrutigoity.

During discovery, the Plaintiffs learned of the existence of certain written

psychological or psychiatric reports which resulted from evaluations of the

Defendant Priests.  Plaintiffs seek to compel the production of these records as

containing or leading to the discovery of relevant evidence.  Plaintiffs allege that

because these evaluations were conducted at the behest of the Diocese of Scranton's

Independent Review Board and Bishop James Timlin, and because the Bishop later

reviewed the reports, no privilege applies to protect their discovery.  In support of

3

these allegations, Plaintiffs provide various correspondence of the Diocese as well as the deposition testimony of Bishop Timlin in this matter.[1]

Defendant Priests assert that all of their psychological/psychiatric records are protected by both the psychiatrist/psychologist-patient privilege and the attorney-client and work-product privileges,[2] that the records should remain confidential,[3] and that they are not relevant to the claims in this case.[4]  Counsel for the Defendant Priests claim that their firm was retained by Frs. Urrutigoity and Ensey in response to a criminal investigation conducted by the Scranton District Attorney's Office prior to the initiation of the instant case, and that the psychological evaluations were initially sought at their suggestion in preparation for a potential criminal

---

[1]      See discussion infra pp. 9-13.

[2]      Defendants argue that their psychological records are protected by both the attorney-client and work product privileges because: 1) the evaluations were sought in anticipation of litigation (the criminal investigation); 2) the evaluations are part of the Defendants' attorneys' mental impressions, legal theories and opinions; and 3) the doctors who performed the evaluations are non-testifying experts in the present case.

[3]      Defendant Priests claim that they did not waive the privilege by disclosures to third parties for the following reasons: 1) disclosure to third parties does not automatically waive the privilege; 2) the Diocese did not receive any written psychological reports, thus there was no disclosure to a third party; 3) they revealed their psychological reports only to their counsel; 4) they voluntarily sought psychological evaluations after conferring with counsel and were not ordered to seek evaluation by a governmental entity or their employer.

[4]      Defendants assert that their psychological evaluations are not relevant under F.R.E. 401 because they did not put their physical or mental state at issue and that their psychiatric condition is inadmissible in a claim based on negligence.

prosecution.[5]  In addition, counsel claims that the Defendant Priests at no time

signed a consent to release the records to the Diocese, and that no member of the

Diocese, including Bishop Timlin, ever received any *written* psychological reports

about either Fr. Ensey or Fr. Urrutigoity.[6]  Counsel admits only that Bishop Timlin

received verbal communications about the duration and location of the Defendant

Priests' psychological counseling.


## DISCUSSION

By our Order of December 11, 2003, we directed the Defendant Priests to be

prepared to produce the records at issue during the January 27, 2004 hearing, so that

we might conduct an *in camera* review if warranted.  We have determined that in

order to address the issues raised in the Motion, such review is necessary.[7]  Two of

---

[5]      The Scranton District Attorney's Office never prosecuted the Defendant Priests. We are unaware of the actual reason for this decision, though we note that the Plaintiffs claim that it was due to the expiration of the statute of limitations.  (Pl. Rep. Br. in Supp. Mot. to Compel at 5.)

[6]      There are three psychological evaluations at issue: 1) evaluation of Fr. Urrutigoity by Fr. Benedict J. Groeschel, Archdiocese of New York (October 26, 2001); 2) evaluation of Fr. Urrutigoity by Dr. Barbara Woody, The Southdown Institute, Ontario, Canada (tests conducted March 11-15, 2002, report issued March 25, 2002); 3) evaluation of Fr. Ensey by Dr. Samuel Mikail, The Southdown Institute, Ontario, Canada (March 2002).  As previously noted, Plaintiffs filed the instant civil action on March 20, 2002.

[7]      For example, the parties have raised the issue of the relevance and admissibility of the psychological records.
Defendants argue that the Pennsylvania Supreme Court's holding in Zane v. Friends Hospital, 836 A.2d 25 (Pa. 2001) prevents us from conducting an *in camera* review of the

the subject reports were in the possession of counsel for the Defendant Priests and were provided to us at the hearing.[8]   However, one of the reports is in the possession of a non-party, The Southdown Institute located in Ontario, Canada, a treatment facility used by the Diocese in such circumstances, and it has not been produced for our inspection.[9]   All of the subject reports involve consultations by the Defendant Priests with psychotherapists.

The U.S. Supreme Court has recognized a psychotherapist-patient privilege under the Federal Rules of Evidence.  In Jaffe v. Redmond, the Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure

---

records, but we do not believe it applies in the present case.  The Zane court addressed the psychotherapist-patient privilege in the context of Pennsylvania's Mental Health Procedures Act, 50 P.S. § 7101 et seq.  That statute "governs the provision of inpatient psychiatric treatment and involuntary outpatient treatment," and thus is inapposite here where the Defendant Priests were evaluated and treatment was not sought.  Id. at 33.  "The purpose of the statute is to assure the availability of adequate treatment to persons who are mentally ill, and to establish procedures to effectuate this purpose."  Id.  In addition, unlike the present case, the party whose records were sought in Zane did not consent to release of his records nor did he waive the privilege.  Id. at 32. See infra pp. 9-14.  Cf. Com. v. Simmons, 719 A.2d 336, 344 (Pa. Super. 1998).

[8]       The reports in our possession, which we have reviewed in camera, are of the evaluations of Fr. Urrutigoity conducted in October 2001 at the Archdiocese of New York and March 2002 conducted at the Southdown Institute in Canada.

[9]       The missing report is of the evaluation of Fr. Ensey conducted in March 2002 at the Southdown Institute in Canada.  In an attempt to obtain the missing report, counsel for Defendant Priests has corresponded with Dr. Mikail at that facility.  In refusing to respond, Dr. Mikail stated that "the law prohibits me from discussing details of my contact with any client without the client's expressed concern.  Nor am I able to confirm having seen a given client in the absence of a signed consent for the release of information."  (Letter of Samuel F. Mikail, Ph.D., C.Psych., ABPP, Clinical Director, The Southdown Institute, February 2, 2004.)

under Rule 501 of the Federal Rules of Evidence."[10] 518 U.S. 1, 15 (1996). Thus, for the privilege to attach, the communication must be both confidential and made in the course of diagnosis or treatment.

Despite their counsel's claim that these evaluations were ordered by them pursuant to pending or threatened criminal or civil litigation, the facts demonstrate that Frs. Ensey and Urrutigoity were asked to see psychotherapists by the Diocese in response to allegations of sexual misconduct.[11] This leads us to conclude that the communications between the Defendant Priests and their psychotherapists were made in the course of diagnosis. The next question we must resolve is whether those communications were confidential, and if so, whether the confidentiality, and therefore the privilege, was waived.

While the Court of Appeals for the Third Circuit has not addressed the issue of waiver of the psychotherapist-patient privilege, it has analyzed waiver in the context of the attorney-client privilege. Because the Supreme Court has recognized that the roots of the psychotherapist-patient privilege and the attorney-client

---

[10]    Fed.R.Evi.501 states that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

[11]    At oral argument, counsel for Defendant Priests admitted that the October 2001 evaluation of Fr. Urrutigoity was conducted at Bishop Timlin's request and that the Diocese received a written copy of the report. Counsel conceded that the claim of confidentiality is weaker as to this evaluation in comparison to those conducted in March 2002.

privilege are the same,[12] we will allow Third Circuit precedent in the area of waiver of attorney-client privilege guide us in our analysis.

In <u>Westinghouse Electric Corp. v. Republic of the Phillipines</u>, the Third Circuit stated that "[i]t is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived." 951 F.2d 1414, 1424 (3d Cir. 1991) (citations omitted). The court also stressed that "under traditional waiver doctrine, a voluntary disclosure . . . to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." <u>Id.</u> at 1427. Whether or not the communications were actually disclosed is irrelevant:  "[t]he attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed." <u>U.S. v. Rockwell International</u>, 897 F.2d 1255, 1265 (3d Cir. 1990) (citation omitted).

Under Pennsylvania law, the psychologist-patient privilege is codified at 42 Pa.C.S.A. § 5944.[13] Pennsylvania courts have held that the privilege may be waived

---

[12]     <u>Jaffe v. Redmond</u>, 518 U.S. 1, 10 (noting that both privileges are "'rooted in the imperative need for confidence and trust.'") (citation omitted).

[13]     42 Pa.C.S.A. § 5944 states that "[n]o psychiatrist or person who has been licensed under the act of March 23, 1972 [] to practice psychology shall be without written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client."

8

by the client, and that this may occur "where the client places confidential information at issue in the case" or "where there is no longer an expectation of privacy regarding the information because the client has made it known to third persons." <u>Rost v. State Bd. of Psychology</u>, 659 A.2d 626, 629 (Pa. Commw. Ct. 1995) (citation omitted).[14]  In discussing the privilege, the Pennsylvania Superior Court has stated both that it is modeled after the attorney-client privilege, and that "codification of the psychotherapist-client privilege is based upon a strong public policy that confidential communications made by a client to the psychotherapist should be protected from disclosure, absent consent or waiver." <u>Commonwealth v. Simmons</u>, 719 A.2d 336, 340 (Pa. Super. 1998).  In <u>M., M.D. v. State Board of Medicine</u>, a Pennsylvania court held that "[a] court-ordered examination does not invoke the psychiatrist-patient privilege because treatment is not contemplated in conducting the examination." 725 A.2d 1266, 1269 (Pa. Commw. Ct. 1999).  In the case at bar, the Defendant Priests' employer, Bishop Timlin and the Diocese, ordered the psychological examinations as part of the Diocese standard practice in investigating sexual molestation accusations.[15]

---

[14]    Pennsylvania state law of privilege applies in diversity cases.  <u>See</u> <u>Gould v. Durkin</u>, No. 96-6249, 1997 U.S. Dist. LEXIS 6896 (E.D.Pa. May 16, 1997) ("In civil cases, the [psychotherapist-patient] privilege can be implicitly waived when the client makes the information known to third parties . . . .") (citations omitted).

[15]    <u>See</u> <u>infra</u> p.12.

9

Our review of the record indicates that the Defendant Priests did not have an expectation of privacy in their psychological evaluations. These evaluations were conducted at the request of their employer, the Diocese; Bishop Timlin received oral or written reports from the psychotherapists about the priests; and the priests consented to or were at least aware of the fact that the Diocese would receive these reports. Various Diocese correspondence and Bishop Timlin's own deposition testimony clearly support Plaintiffs' contention that any privilege attaching to these communications was waived by either disclosure or intended disclosure to third parties.

In a November 2001 letter to a church superior, Bishop Timlin writes that Fr. Urrutigoity was psychologically tested "at my request." (Pl. Mot. to Compel at Ex. D.) The Bishop also indicates that he has received a copy of the evaluation.[16] In addition, the minutes of a January 2002 meeting of the clergy's Independent Review Board state that "[t]he Board unanimously recommended that both priests should be sent for a comprehensive evaluation at a facility where our priests have been treated in the past." (Pl. Mot. to Compel at Ex. E.) An internal memo from Fr. Kopacz to Bishop Timlin discusses the arrangements for the Defendant Priests' admission to

---

[16]     By letter dated October 27, 2001 Fr. Groeschel sent to Bishop Timlin his October 2001 evaluation of Fr. Urrutigoity. In a post-script he asked Bishop Timlin to share the report with Bishop Dougherty.

various psychological counseling facilities in the event that they "consent to

evaluation and possible treatment." (Pl. Mot. to Compel at Ex. A.)   All of this

contradicts Defendant Priests'counsel's assertions that they ordered these

evaluations, and thus that the written reports are protected by the attorney-client and

work-product privileges.

The record also includes correspondence between Fr. Urrutigoity and Bishop

Timlin, in which Fr. Urrutigoity expresses to the Bishop his reluctance to submit to a

psychological evaluation, apprehending that consenting to such is against legal and

psychological advice he has received, and noting that he had previously undergone a

similar evaluation in 2001.  Fr. Urrutigoity concludes that "[i]n spite of these

reservations, I am willing to undergo the requested evaluation in order to oblige *the

demand of your independent board and to facilitate your personal position in the

current predicament.*" (Pl. Mot. to Compel at Ex. B) (emphasis added).  Bishop

Timlin, in response to these concerns, states that "*[i]t is [] at my request to comply

with that of our Independent Review Board as one more step in the process.*" Id.

(emphasis added).

Potentially the most damaging evidence in support of the proposition that the

privilege was waived is a July 2002 letter to a Vatican cardinal.  In it, Bishop Timlin

states that his "personal judgment regarding the guilt or innocence of Fr. Urrutigoity

and Fr. Ensey is presently suspended. . . . A psychological report about Fr. Ensey, however, indicates problems with pornography and other characteristics which concern me given the allegations against him." (Pl. Mot. to Compel at Ex. F.)[17] This correspondence can lead us to no conclusion other than that Bishop Timlin, whether by oral summary, or written report, was made aware of the results of the subject evaluation.

In addition, in deposition testimony the Bishop admits that he asked Frs. Ensey and Urrutigoity to undergo psychological evaluations. (Pl. Mot. to Compel at Ex. G, pp. 94-96.) It is evidently the practice of the Diocese to seek such evaluations as an investigative tool in addressing allegations of sexual molestation against its priests. Id. at 96-97, 104. The Bishop states that he received "a report somewhere along the line but never got the actual [March 2002] evaluation[s]" of Frs. Ensey and Urrutigoity. Id. He further states that he thinks "the attorneys for the priests said that they did not want them to come to us," and that he received "some kind of [verbal] report about the thing but it was not a written report." Id. The Bishop later admits he received "some kind of a summary" of the Defendant Priests' psychological evaluations. Id. at 99.

Finally, the Bishop states that as part of the Diocese's procedure of sending

---

[17]     This is quoted from a draft, and was excised from the final version of the letter.

accused priests for evaluations, the priests are asked to sign a release allowing the

Bishop to receive the results.  Bishop Timilin "presumes" that Frs. Ensey and

Urrutigoity signed a release but that he never received the evaluations because the

counsel for the Defendant Priests intervened.  Id. at 105.

Our review of the deposition testimony of the Defendant Priests provides

further support that the psychotherapist-patient privilege has been waived.  Fr. Ensey

admits that Bishop Timlin requested the evaluations in early 2002.  (Pl. Mot. to

Compel at Ex. H, 59.)  Fr. Urrutigoity also admits that he was twice evaluated at the

request of Bishop Timlin.  (Def. Br. Opp. Mot. to Compel at Ex. A, 97-98.) As to the

October 2001 evaluation conducted by Bishop Groeschel, Fr. Urrutigoity states that

it was his understanding that the results would be relayed to Bishop Timlin.  Id. at

98.  When asked whether Bishop Timlin was informed of the results of the March

2002 evaluation, Fr. Urrutigoity states that his "lawyer decided, at that point, to

coordinate all the psychological effort, because it was legal case and so he received

the report, not Bishop Timlin [sic]."  Id. at 103.  There is no question,

notwithstanding the Defendant Priests' counsel's protestations to the contrary, that

the psychological evaluations were conducted at the request of Bishop Timlin and

the Diocese.  It is also clear to us that the Defendant Priests expected, at the very

least, that Bishop Timlin would receive the results of their evaluations.

Because the Defendant Priests underwent psychological evaluations knowing that the results would be disclosed the third parties, and possibly even explicitly consented to such disclosure, and further because it is obvious that at least some of the contents of these evaluations were in fact disclosed to third persons, we hold that the reports are not privileged.  We therefore will allow discovery of the two evaluations of Fr. Urrutigoity, which we had an opportunity to review *in camera*, subject to strict limitations.[18]  These may be used by counsel in this case for deposition and other discovery purposes, with the proviso that they remain under seal and are kept strictly confidential.  Violation of this confidentiality order will be will result in significant sanctions and contempt penalties.

Finally, nothing herein is meant to imply or predict the admissibility of any portion or portions of the two subject reports at the trial of this matter.  It is axiomatic that discoverability and admissibility at trial are determined by separate analysis.  Our determination relates strictly to discoverability, and thus any analysis and final judgment regarding admissibility at the time of trial is necessarily deferred.

**NOW, THEREFORE, IT IS ORDERED THAT:**

---

[18]    We will defer our ruling with respect to the March 2002 evaluation of Fr. Ensey since it has not been produced for our inspection.  Counsel for the Defendant Priests indicate that the written report resulting from the evaluation of Fr. Ensey is not in their possession, and in fact it appears that any such report is in the possession of Dr. Mikhail, in Canada, as aforestated.

1. Plaintiffs' Motion to Compel (doc. 35) is GRANTED, to the following extent:

i. Defendant Priests' counsel will produce the following reports and deliver the same to Plaintiffs' counsel in response to Plaintiffs' requested discovery: (1) the October 2001 Psychological Report of Fr. Carlos Urrutigoity; (2) the March 2002 Assessment Report of Fr. Carlos Urrutigoity.

ii. The said reports will be kept strictly confidential and revealed only to the parties to this action and their respective counsel.

iii. To the extent the contents of the subject reports are referenced in any way in the record proceedings in this case, including during depositions, the resulting document or transcript will be filed under seal.

iv. Violation of this confidentiality mandate as set forth herein by any party or their counsel will result in the imposition of appropriate and if necessary severe contempt sanctions by this Court.[19]

v. Any ruling on the admissibility of the subject reports at time of trial is hereby deferred.

vi. A ruling with respect to discoverability of the March 2002

---

[19] Plaintiffs' counsel references a "Confidentiality Order" that he alleges was stipulated to by the parties and signed by the Court. Our search of the docket reveals no such Order. If the parties wish to stipulate to the sealing of certain documents beyond that which is provided in this Order due to the sensitive subject matter of this case, they should do so and present a motion to the Court for ratification.

evaluation of Fr. Ensey is likewise deferred until such time as the said report

is produced and filed with this Court for *in camera* inspection.

John E. Jones III
United States District Judge