IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, JOHN DOE, SR., and JANE DOE,<br>           Plaintiffs,<br><br>vs.<br><br>FATHER ERIC ENSEY,<br>FATHER CARLOS URRUTIGOITY,<br>DIOCESE OF SCRANTON,<br>BISHOP JAMES C. TIMLIN,<br>THE SOCIETY OF ST. JOHN,<br>THE PRIESTLY FRATERNITY<br>OF ST. PETER and ST. GREGORY'S ACADEMY,<br>           Defendants. | NO. 3 CV 02-0444<br><br>(JONES, D.J.)<br><br>**FILED**<br>**SCRANTON**<br><br>JUN 0 1 2004<br><br>PER _____<br>DEPUTY CLERK |

**BRIEF OF DEFENDANTS, THE PRIESTLY
FRATERNITY OF ST. PETER AND ST. GREGORY'S ACADEMY,
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

I.    STATEMENT OF FACTS

John Doe, who is presently an adult, alleges that while he was under the age of 18, that he was sexually molested by the defendants, Father Eric Ensey and Father Carlos Urrutigoity.

John Doe was born on May 16, 1981.

Doe was a high school student at St. Gregory's Academy located in Moscow, Lackawanna County, Pennsylvania. St. Gregory's Academy is a Catholic high school for boys operated by the Priestly Fraternity of St. Peter, an organization of Roman Catholic priests. The property is owned by and leased from the co-defendant, Bishop James C. Timlin, Bishop of the Roman Catholic Diocese of Scranton.

The co-defendants, Father Eric Ensey and Father Carlos Urrutigoity, are members of the Society of St. John, a separate and distinct religious organization of Catholic priests that has no legal affiliation with the Priestly Fraternity of St. Peter or with St. Gregory's Academy.

Father Eric Ensey and Father Carlos Urrutigoity of the Society of St. John, were granted permission by the Priestly Fraternity of St. Peter and by the Diocese of Scranton to take up temporary residence at St. Gregory's Academy while John Doe was a student there.

Doe alleges that he was sexually abused by Father Eric Ensey on the following dates, in the manner indicated:

(a) On May 16, 1998, while at St. Gregory's Academy, Doe alleges that he was kissed on the lips by Father Eric Ensey and that Ensey inserted his tongue into Doe's mouth during the kissing (N.T. 77-78, 90, deposition of John Doe).

(b) The second series of incidents occurred during November of 1998 while on a Thanksgiving holiday trip made by John Doe and Father Eric Ensey to the residence of Ensey's parents in California. Allegations of multiple incidents of anal sex and oral sex allegedly occurred at the residence of Father Ensey's parents in California (N.T. 108-129).

(c) The third series of incidents pertain to three back massages that occurred approximately in the Spring of 1999 (N.T. 151).

(d) The fourth series of incidents pertain to four occasions when Father Ensey allegedly groped the genitals of John Doe, while the two of them were sleeping in the same bed between the period December, 1998 and May of 1999 (N.T. 151, 137-148).

John Doe turned age 18 on May 16, 1999.

Doe also alleges sexual abuse by Father Carlos Urrutigoity however, the same occurred while Doe was an adult during the Fall of 2000 (N.T. 73).

The individual defendants, Father Eric Ensey and Father Carlos Urrutigoity, are not employees, nor were they in a master/servant relationship with the moving parties, Priestly Fraternity

of St. Peter and St. Gregory's Academy. It appears the basis upon which this action was filed, pertains to the circumstances under which Ensey and Urrutigoity were allowed to take up temporary residence at St. Gregory's Academy, as the result of which plaintiff alleges he came into contact with both Ensey and Urrutigoity as a student at the Academy.

No evidence has been discovered that would show that the moving parties herein either knew or had reason to know that either Ensey or Urrutigoity were likely to commit intentional misconduct.

II. QUESTIONS PRESENTED

    A. WHETHER THE MOVING PARTIES CAN BE LIABLE FOR ALLEGED SEXUAL ABUSE BY FATHER ERIC ENSEY, THAT OCCURRED AT THE RESIDENCE OF ENSEY'S PARENTS IN CALIFORNIA, THREE THOUSAND MILES AWAY FROM ST. GREGORY'S ACADEMY?

    Suggested Answer: No.

    B. WHETHER THE MOVING PARTIES CAN BE LIABLE FOR AN ALLEGED KISSING INCIDENT THAT OCCURRED IN MAY OF 1998 AT ST. GREGORY'S ACADEMY?

    Suggested Answer: No.

    C. WHETHER THE MOVING PARTIES CAN BE LIABLE FOR THE ACTIONS AND/OR OMISSIONS OF FATHER CARLOS URRUTIGOITY, SINCE THE SAME OCCURRED WHILE JOHN DOE WAS AN ADULT?

    Suggested Answer: No.

    D. WHETHER THE MOVING PARTIES CAN BE LIABLE FOR THE ACTIONS AND OMISSIONS OF FATHER ERIC ENSEY AND FATHER CARLOS URRUTIGOITY, IN THE ABSENCE OF A MASTER/SERVANT RELATIONSHIP WITH SAID INDIVIDUALS?

    Suggested Answer: No.

    E. WHETHER THE MOVING PARTIES CAN BE LIABLE FOR THE ACTIONS AND OMISSIONS OF FATHER ERIC ENSEY AND FATHER CARLOS URRUTIGOITY IN THE ABSENCE OF ANY EVIDENCE TO SHOW THAT THE PRIESTLY FRATERNITY OF ST. PETER KNEW OR SHOULD HAVE KNOWN

        THAT SAID INDIVIDUALS WERE LIKELY TO COMMIT INTENTIONAL MISCONDUCT?

        Suggested Answer: No.

  F.    WHETHER PENNSYLVANIA LAW RECOGNIZES A CAUSE OF ACTION FOR EMOTIONAL DISTRESS ON THE PART OF THE PARENTS, WHERE THE PARENTS DID NOT WITNESS THE ALLEGED INCIDENTS?

        Suggested Answer: No.

III.  **ARGUMENT**

  A.    <u>The incidents of alleged sexual abuse that occurred in California, at the residence of the parents of Father Eric Ensey, are not matters upon which the Priestly Fraternity of St. Peter or St. Gregory's Academy can be found to have liability.</u>

John Doe and Father Eric Ensey made a personal trip to California during the Thanksgiving holiday of November of 1998, to stay at the residence of the parents of Father Ensey. While there, John Doe alleges that he was a victim of non-consensual anal sex and oral sex at the hands of Father Eric Ensey.

This particular trip was a private trip made by the two individuals, and it had no connection with the school. It was not an authorized school trip. It had nothing to do with the school.

According to John Doe's deposition testimony, Father Ensey suggested that they take a trip to California in 1998 for the purpose of visiting Thomas Aquinas College. (Doe Dep. p.111). John Doe was considering attending the college following his graduation from St. Gregory's. Father Ensey arranged the trip and John Doe believes that either his parents or Father Ensey paid for the trip. (Doe Dep. pp. 111-112). While in California, John Doe and Father Ensey stayed with Father Ensey's parents for a long Thanksgiving holiday of approximately five days. (Id. at 111, 120-121). During that time, John Doe has alleged that Father Ensey sexually assaulted him on at least two occasions. (Id. at 122-136). These assaults, if found to have occurred, are in no way attributable to either the

Priestly Fraternity of St. Paul or to St. Gregory's Academy. They occurred off of school property, during a trip only with Father Ensey, and the Defendants had no part in the trip, nor did they sanction the trip. For these reasons, partial summary judgment should be granted to these Defendants as they can not be found liable for these solitary acts of Father Ensey.

There is no evidence to establish a master/servant relationship between Father Ensey and the moving parties herein.

Even if there were to be a master/servant relationship, which there is not, the only way which a master could be held liable under this particular set of facts, would be if the plaintiff was able to establish that the servant "is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant". Restatement (Second) of Torts, Section 317(a)(i); Hutchison ex rel. Hutchison v. Luddy, 742 A.2d 1052 (Pa. 1999).

Not only can plaintiffs not establish a master/servant relationship between Father Ensey and the moving parties herein, they can also not establish that the premises where the abuse took place in California was in the possession of the master. Nor can plaintiffs establish that a servant was privileged to enter the premises only as the servant. These latter elements cannot be established, because the abuse took place at Father Ensey's parents' home, which is owned by his parents, and not by the moving parties herein. Ensey's presence and entry upon the premises had absolutely nothing to do with any association he had with the moving parties herein.

Accordingly, the moving parties herein cannot be liable for the incidents of assault that allegedly occurred in California.

B.  The Priestly Fraternity of St. Peter and St. Gregory's Academy cannot be held liable for the alleged kissing incident.

John Doe has testified that on May 16, 1998, while a student at St. Gregory's Academy, that he was kissed on the lips by Father Ensey. He alleges that during the kissing incident, Father Ensey's tongue entered Doe's mouth.

Although the kissing incident can certainly be characterized as inappropriate, there is no law in Pennsylvania that would hold that kissing is legally actionable, and can be the basis for a claim for monetary damages.

Accordingly, partial summary judgment should be entered in favor of the defendants on this claim of the plaintiff.

C.  The claims against Father Urrutigoity occurred at a time when John Doe was an adult. Accordingly, no cause of action is stated against the defendants as a result of any action or omission of Father Carlos Urrutigoity.

The allegations of abuse against Father Urrutigoity pertain to alleged fondling incidents that occurred in September and October of the year 2000 (N.T. 73-76).

However, John Doe reached majority age of 18 on May 16, 1999. Accordingly, these incidents occurred between two adults, and are not actionable.

Accordingly, it is respectfully submitted that a partial summary judgment must be entered in favor of the moving parties herein for any claims asserted pertaining to alleged abuse by Father Carlos Urrutigoity.

D.    <u>There is no master/servant relationship between Father Eric Ensey and Father Carlos Urrutigoity with the Priestly Fraternity of St. Peter and St. Gregory's Academy. Accordingly, the moving parties herein cannot be held vicariously liable for any alleged abuse by the two individual defendants.</u>

There is no evidence to establish a master/servant relationship between Father Eric Ensey, Father Carlos Urrutigoity and the moving parties herein.

An "agent" may be either: (1) a servant/employee, or (2) an independent contractor. <u>Smalich v. Westfall Twp.</u>, 269 A.2d 476 (Pa. 1968); <u>Juarbe v. City of Philadelphia</u>, 431 A.2d 1073 (Pa.Super. 1981). As the Pennsylvania Superior Court in <u>Juarbe</u> succinctly explained:

> A principal and agent can be in the relationship of a master and servant, or simply in the status of two independent contractors. See, <u>Smalich v. Westfall</u>, 440 Pa. 409 269 A.2d 476 (1970); <u>Turley v. Kotter</u>, 263 Pa.Super. 523, 398 A.2d 699 (1979). If a particular agent is not a servant, the principal is not considered a master who may be held vicariously liable for the negligent acts of the agent. <u>Smalich v. Westfall</u>, <u>supra</u>; <u>Turley v. Kotter</u>, <u>supra</u>. A servant is an agent whose *physical conduct* in the performance of the service is *controlled* or *is subject to the right of control* by the master, that is, a master controls not only the *results* of the work, but the *manner* in which the work is to be performed.

Id. at 1075-76 (emphasis in original). As the Pennsylvania Supreme Court in <u>Smalich</u> further explained:

> "A master is a species of principal, and a servant is a species of agent:" Restatement (Second) Agency §2, comment a. "A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the *physical conduct* of the other in the performance of the service. A servant is an agent employed by a master to perform service in his affairs whose *physical conduct* in the performance of the service is controlled or is subject to the right to control by the master:" . . . Thus a master not only controls the results of the work but also may direct the manner in which such work shall be done, and a servant, in rendering the agreed services, remains entirely under the control and direction of the master: <u>Joseph v. United Workers Assn.</u>, 343 Pa. 636, 23 A.2d 470 (1942); <u>McColligan v. Penna. R.R. Co.</u>, <u>supra</u>. "Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal \*\*\*:" <u>Commonwealth v. Minds Coal Mining Corp.</u>, <u>supra</u>, 60 A.2d at 17. Because a master has the right to exercise control over the physical

>activities of the servant within the time of service, he *is* vicariously liable for the servant's negligent acts committed within the scope of his employment: Restatement (Second), Agency §219 (1958); Prosser, the Law of Torts, §69 (3d ed. 1964).

Smalich, 269 A.2d at 481.

The court in Smalich clarified a common misunderstanding regarding vicarious liability, explaining "Since an agent who is not a servant is not subject to any right of control by his principal over the details of his physical conduct, the responsibility rests upon the agent alone, and the principal is *not* liable, for harm caused by his unauthorized negligent physical conduct. Thus, it has long been said to be the general rule that there is no vicarious liability upon the principal in such case." Id.

Thus, the doctrine of vicarious liability applies only where the agent qualifies as a servant/employee. Smalich, above. See, Myszkowsk v. Penn Stroud Hotel, Inc., 634 A.2d 622 (Pa.Super. 1993); Juarbe v. City of Philadelphia, 431 A.2d 1073 (Pa.Super. 1981).

Father Ensey and Father Urrutigoity, who were members of the co-defendant, Society of St. John, were allowed to take up temporary residence in the dormitory at St. Gregory's Academy as a result of the generosity of the Priestly Fraternity of St. Peter. Some of the members of the Society of St. John volunteered to serve as part-time teachers at the Academy and they were not paid for their services.

Although it has to be emphasized there was no master/servant relationship, even were the Court to find otherwise, an employer cannot be held responsible as a matter of law, where an employee commits an assault for personal reasons and not within the scope of his employment. Fitzgerald v. McCutcheon, 410 A.2d 1270 (Pa.Super. 1979).

8

The alleged abuse, can not reasonably be argued to have been actuated by an intent to perform any business of the Priestly Fraternity of St. Peter or for St. Gregory's Academy.

For these reasons, summary judgment should be entered in favor of the moving parties herein and against the plaintiffs.

> E. Summary judgment should be entered in favor of the defendants, Priestly Fraternity of St. Peter and St. Gregory's Academy, since the plaintiffs have produced no evidence from which a jury could find that these defendants knew or should have known that Father Ensey and Father Urrutigoity were likely to commit intentional misconduct.

The plaintiffs have failed to produce any evidence to show that the Priestly Fraternity of St. Peter and St. Gregory's Academy knew or should have known that Father Ensey and Father Urrutigoity were likely to commit intentional misconduct.

There is no evidence to show that the moving parties herein had any knowledge concerning any past intentional misconduct committed by Father Ensey and Father Urrutigoity.

In fact, plaintiff himself, John Doe, has acknowledged that he never complained to anyone at St. Gregory's Academy or the Priestly Fraternity about the alleged abuse (N.T. 206). John Doe acknowledges that the first that he presented a complaint to anyone in the Catholic church about Father Ensey and Father Urrutigoity was in correspondence to the Papal Nuncio (the Vatican's Ambassador to the United States) located in Washington, DC in December of 2001 (N.T. 207).

Accordingly, in the absence of notice, the defendants cannot be held liable for any intentional misconduct committed by Father Ensey and Father Urrutigoity. See., e.g., Hutchison ex rel. Hutchison v. Luddy, supra.

F.    <u>The emotional distress claims of the plaintiff's parents are barred since they were not present at the time of the alleged abuse.</u>

Plaintiff's parents can not recover for infliction of emotional distress in this case because they were not present during any of the alleged incidents of assault. Pennsylvania prevents recovery for emotional distress by the parents of an alleged victim where the parents were not present at the time the assault occurred. <u>Johnson v. Caparelli</u>, 625 A.2d 668 (Pa.Super. 1993). The parents of John Doe have alleged emotional distress as a result of the allegations of John Doe. (Complaint Counts IX and X). There has been no allegation made that the parents were present during any of the alleged assaults. Rather, John Doe clearly states that no one was present at the times of the assaults other than himself and the then offending priest. For this reason, partial summary judgment must be granted in favor of all defendants and against the parent plaintiffs on the issues of emotional distress.

IV.    <u>CONCLUSION</u>

For the reasons set forth hereinabove, it is respectfully submitted that summary judgment must be entered in favor of the Priestly Fraternity of St. Peter and St. Gregory's Academy and against the plaintiffs.

Respectfully Submitted,

LEESON, LEESON & LEESON

By_____
JOSEPH F. LEESON, JR.
ID NO. 32540
70 East Broad Street
P.O. Box 1426
Bethlehem, PA 18016-1426
(610) 691-3320

Attorney for Defendants, Priestly Fraternity of St. Peter and St. Gregory's Academy