IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE, JOHN DOE, SR.  and
JANE DOE,

                                    Plaintiffs

vs.

FATHER ERIC ENSEY,
FATHER CARLOS URRUTIGOITY,
DIOCESE OF SCRANTON,
BISHOP JAMES C.  TIMLIN,
THE SOCIETY OF ST.  JOHN,
THE PRIESTLY FRATERNITY OF ST.
PETER, and
ST.  GREGORY'S ACADEMY,

                                    Defendants

No. 3:CV 02-0444

Judge John E.  Jones, III

(ELECTRONICALLY FILED)

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C.  TIMLIN

TABLE OF CONTENTS

Table of Authorities

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of Facts and Procedural History

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Questions Involved  . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     Standard for Summary Judgment  . . . . . . . . . . . . . . . . . . . 5

    II.    The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count Two of Plaintiffs' Complaint because the record does not contain sufficient evidence for a jury to conclude that they were negligent.  . . . . . . . 6

    III.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count four of Plaintiffs' Complaint because the record does not contain sufficient evidence for a jury to conclude that the Defendants, Father Eric Ensey and Father Carlos Urrutigoity, were acting as their agents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Counts Five and Six of Plaintiffs' Complaint to the extent that they are based on the alleged assaults and batteries committed by Defendants, Father Ensey and Father Urrutigoity, because the damages from the injuries resulting from said assaults and batteries are recoverable in Counts One and Two of the Complaint.  . . . . . . . . . . . . . . . . . . . . . 12

    V.    The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count Five of Plaintiffs' Complaint on the grounds that the record does not contain sufficient evidence for a jury to conclude that the Defendants intentionally inflicted emotional distress upon the Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    VI.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count Six of Plaintiffs' Complaint on the grounds that the record does not contain sufficient evidence for a jury to conclude that the Defendants negligently inflicted emotional distress upon the Plaintiffs.  . . . . . 17

VII.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count Seven of Plaintiffs' Complaint on the grounds that the record does not contain sufficient evidence for a jury to conclude that the Defendants were liable to the Plaintiffs on a theory of <u>In Loco Parentis</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VIII.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on Count Five of Plaintiffs' Complaint on the claims of the minor Plaintiff because the record establishes that said claims are barred by the Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IX.   The Court should grant summary judgment in favor of Defendants, Diocese of Scranton and Bishop James C.  Timlin, on all claims of the adult Plaintiffs because the record does not contain sufficient evidence for a jury to conclude that the elements of said claims have been established. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

### TABLE OF AUTHORITIES

**Cases:**

Atamian v. Assadzadeh, Civ. A. No. 00-3182, 2002 WL 538977 (E.D.Pa. April 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Ayon v. Gourley, 47 F.Supp.2d 1246, 1249 (D.Colo. 1998)  . . . . . . . . . . . . 7

Barnes v. American Tobacco Co., 161 F.3d 127, 147 -148 (3d Cir. 1998) . . .  24

Burke v. Pope, 366 Pa. Super. 488, 531 A.2d 782 (1987)  . . . . . . . . . . . . .  19

Cardamone v. Elshoff, 442 Pa. Super. 263, 275-276, 659 A.2d 575, 581 (Pa. Super. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 81 L.Ed.2d 265 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Chalupiak v. Stahlman, 368 Pa. 83, 81 A.2d 577, 580 (Pa. 1951)  . . . . . . . . 9

Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke, 947 F.2d 83, 87 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Commonwealth v. Minds Coal Mining Corp., 360 Pa. 7, 60 A.2d 14 (1948) . .  10

Consolidated Rail Corp. v. Gottshal, 512 U.S. 532, 114 S.Ct. 2396, 2405, 129 L.Ed.2d 427 (1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Costa v. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa. Super. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

D'Auria v. Liposky, 197 Pa. Super. 271, 177 A.2d 133 (1962) . . . . . . . . . . .  19

Dausch v. Ryske, 1993 W.L. 34873 (N.D.Ill. 1993) . . . . . . . . . . . . . . . . . . . 8

Dempsey v.  Walso Bureau, Inc., 431 Pa.  562, 246 A.2d 418 (1968) . . . . . . . 6

Doe v. Philadelphia Community Health Alternatives AIDS Task Force,  745 A.2d 25, 27 -28 (Pa. Super. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Field v. Omaha Standard, Inc., 582 F.Supp. 323, 327 (E.D. Pa. 1983) . . . . . . 9

Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 410 A.2d 1270 (1979) . .  10, 11

Frempong-Atuahene v. Redevelopment Auth. of Phila., 1999 WL 167726, *7 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Friter v. Iolab Corp., 414 Pa. Super 622, 607 A.2d 1111, 1115 (1992) . . . . .  13

Gradwell v. Strausser, 416 Pa. Super. 118, 610 A.2d 999 (1992) . . . . . . . .  19

Hackney v. Woodring, 539 Pa. 266, 652 A.2d 291 (1994) . . . . . . . . . . . . .  17

Hartz v. Diocese of Greensburg, 94 Fed.Appx. 52, 55, 2004 WL 637137, *2 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Higgins v. Shenango Pottery Co., 256 F.2d 504, 510 (3d Cir. 1958) . . . . . . .  9

Hunger v. Grand Cent. Sanitation, 447 Pa. Super. 575, 670 A.2d 173, 177 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Hutchison v. Luddy, 742 A.2d 1052, 1057, citing Dempsey v. Walso Bureau, Inc., 431 Pa. 562, 246 A.2d 418 (1968) . . . . . . . . . . . . . . . . . . . . . . .  6, 7

Isely v. Capuchin Province, 888 F.Supp. 1138, 1150-51 (E.D. Mich. 1995) . . .  8

Johnson v. Caparelli, 425 Pa. Super. 404, 413, 625 A.2d 668, 672 (Pa. Super. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Karner v. McMahon, 433 Pa. Super. 290, 640 A.2d 926 (1994) . . . . . . . . .  19

Kazatsky v. King David Memorial Park, 515 Pa. 183, 527 A.2d 988, 994-95 (Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17

Klein v. Sarubin, 324 Pa. Super. 363, 368 , 471 A.2d 881, 883 (Pa. Super. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

L.S.K. v. H.A.N., 813 A.2d 872, 876 (Pa. Super. 2002) . . . . . . . . . . . . . .  19

Lakits v. York, 258 F.Supp.2d 401, 407 (E.D. Pa. 2003) . . . . . . . . . . . . . .  13

Levenson v. Souser, 384 Pa. Super. 132, 557 A.2d 1081, 1088 (Pa. Super. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

M.B. ex rel. T.B. v. City of Philadelphia, 2003 WL 1144307, *2 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

McMaster v. Reale, 177 Pa. Super. 429, 431, 110 A.2d 831, 832 (1955) . . .  11

Mitch v. Bucks County Children & Youth Social Service Agency, 383 Pa. Super. 42, 556 A.2d 419 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mulinix v. Mulinix, 1997 W.L. 585775 (D.Minn. 1997) . . . . . . . . . . . . . . . . . 8

Paves v. Corson, 765 A.2d 1128, 1134 (Pa. Super. 2000) . . . . . . . . . . . . . 17

Potter Title & Trust Co. v. Knox, 381 Pa. 202, 207, 113 A.2d 549, 551 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 -700 (Pa. Super. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Robinson v. May Dept. Stores Co., 246 F.Supp.2d 440, 444 (E.D. Pa. 2003) . 15

Rosado v. Diaz, 425 Pa. Super. 155, 624 A.2d 193 (1993) . . . . . . . . . . . . 19

Rosenberg v. Cohen, 370 Pa. 507, 88 A.2d 707 (Pa. 1952) . . . . . . . . . . . . . 9

Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir.1985) . . . . . . . . . . 23

Sanchez by Rivera v. Montanez, 165 Pa.  Commw. 381, 645 A.2d 383 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Scott v. Purcell, 490 Pa. 109, 415 A.2d 56, 60 (Pa. 1980) . . . . . . . . . . . . . 9

Sides v. Cleland, 436 Pa. Super 618, 648 A.2d 793, 796 (1994) . . . . . . . . 13

Sinn v. Burd, 486 Pa. 146, 170-71, 404 A.2d 672, 685 (1979) . . . . . . . . . . 18

Smilach v. Westfall, 440 Pa. 409, 269 A.2d 476, 481 (Pa. 1970) . . . . . . 9, 10

Smith v. School Dist. of Philadelphia, 112 F.Supp.2d 417, 428 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Spells v. Spells, 250 Pa. Super. 168, 378 A.2d 879 (1977) . . . . . . . . . . . . 19

T.B. v. L.R.M., 567 Pa. 222, 228, 786 A.2d 913, 916 (2001) . . . . . . . . . . . 19

Van Coutren v. Wells, 430 Pa. Super. 212, 633 A.2d 1214 (1993) . . . . . . . . 19

Vicki N. v. Josephine N., 437 Pa. Super. 166, 649 A.2d 709 (1994) . . . . . . 19

Wilder v. United States, 230 F.Supp.2d 648, 2002 WL 31496349, (2002) . . . 15

Wilson v. Wilson, 406 Pa. Super. 473, 594 A.2d 717 (1991) . . . . . . . . . . . . 19

**Statutes:**

2002 Pa. Legis. Serv. Act 2002-86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 Pa.C.S.A. §5521(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 Pa.C.S.A. §5524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 Pa.C.S.A. §5533(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Fed. R. Civ. P. 56( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 56(e ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

P.L. 518, No. 86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

**Treatises:**

Prosser & Keeton §18, at 113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Prosser, The Law of Torts §70 (3d ed. 1964) . . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) of Agency §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Restatement (Second) of Agency §14, comment a . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) of Agency §250 (1958) . . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) of Torts §18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Second) of Torts §21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Second) of Torts §317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Restatement (Second) of Torts §46 . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Restatement (Second) of Torts §892 cmt. b & c . . . . . . . . . . . . . . . . . . . . . 24

Restatement (Second) of Torts §892A . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>**STATEMENT OF FACTS AND PROCEDURAL HISTORY**</u>

Defendants, Father Eric Ensey ("Father Ensey") and Father Carlos Urrutigoity ("Father Urrutigoity") are Roman Catholic priests incardinate of the Diocese of Scranton.  Father Ensey and Father Urrutigoity were, at all times relevant to this matter, members of the Defendant, the Society of St.  John (the "Society"), which is, under Canon Law, a public association of the faithful.  From November 1997 through September 15, 1999, the priests of the Society resided at St.  Gregory's Academy ("St.  Gregory's"), a Catholic boarding school operated by the Defendant, The Priestly Fraternity of St. Peter, in Elmhurst, Pennsylvania.  On September 15, 2000, the Society purchased property in Shohola and Father Ensey and Father Urrutigoity moved to that location.  Statement of Material Facts, of Defendants, the Diocese of Scranton and Bishop Timlin, submitted in support of their Motion for Summary Judgment ("S.M.F.") 6.

Plaintiff Doe ("Doe") was born on May 16, 1981.  S.M.F. 1.  Doe attended high school at St.  Gregory's.  He graduated in 1999.  S.M.F. 7.  After high school, Doe attended St.  Thomas Aquinas College, beginning in the fall of 1999.  He stayed one semester, leaving in January 2000.  S.M.F. 8.  After leaving St.  Thomas Aquinas, Doe lived in North Carolina until September 2000, when he moved to Shohola, Pennsylvania, to attend a college that he believed the Defendant, Society, was starting.  S.M.F. 9-10.  Doe remained at Shohola until November 2000, even after being told he could not attend the Society's college because he was not joining the Seminary.  S.M.F. 11-13.

Doe alleges that Defendant, Father Ensey, assaulted him on numerous occasions between May 1998 and May 1999 while he was a student at St.

1

Gregory's.  S.M.F. 14.  These claims will be referred to in this brief as the "Ensey/St. Gregory's" claims.  He further alleges that Father Ensey and Father Urrutigoity each separately assaulted him on two or three occasions in September or October of 2000, while he was at Shohola.  S.M.F. 15.  These claims will be referred to as the "Ensey/Shohola" and "Ensey/Urrutigoity" claims.

In April 1999, Bishop Timlin was notified by Bishop Bernardus Fellay of the Fraternity of St. Pius X that a seminarian named Matthew Selinger had alleged that Father Urrutigoity had sexually assaulted him in 1997 while on a trip from Winona, Minnesota to Missouri.  S.M.F. 16.  Bishop Fellay also informed Bishop Timlin that Father Urrutigoity had been accused of a similar action while he had been a seminarian in Argentina, but that the matter was not absolutely proven and a certain obscurity remained.  S.M.F. 17.  Upon receipt of Bishop Fellay's letter, Bishop Timlin immediately interviewed Father Urrutigoity and Father Urrutigoity denied the allegations.  The Diocese retained an independent attorney to investigate the allegations.  Bishop Timlin then directed Bishop John M. Dougherty, the Diocese auxiliary bishop, and the independent attorney, to go to Minnesota and interview Selinger.  Father Joseph Kopacz, the Diocese's Vicar for Priests, went with Bishop Dougherty and the attorney hired by the Diocese, to Minnesota to interview Selinger. S.M.F. 18-19.  Bishop Dougherty also conducted interviews of the other priests who were on the 1997 trip from Minnesota to Missouri with Father Urrutigoity and Selinger.  S.M.F. 20.  Based on his investigation Bishop Dougherty concluded that the allegations against Father Urrutigoity were not established.  S.M.F. 22.

Bishop Dougherty reported the results of his investigation to Bishop Timlin, who then referred the matter to the Diocese of Scranton Independent Review Board.  The

Review Board was also unable to conclude that Father Urrutigoity had sexually assaulted Selinger.  S.M.F. 22-24.  Based on the decision of the Review Board, Bishop Timlin did not take any action against Father Urrutigoity.  S.M.F. 25.

Prior to 2001, neither Bishop Timlin nor the Diocese of Scranton received any complaints or notice of improper sexual activity by Father Ensey.  S.M.F. 26.

Plaintiff instituted this action on March 20, 2002.

### STATEMENT OF QUESTIONS INVOLVED

I.   Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to Count Two of Plaintiff's Complaint because the record does not contain sufficient evidence for a jury to conclude that Bishop Timlin and the Diocese were legally responsible for the alleged assaults committed by the Defendants, Father Eric Ensey and Father Carlos Urrutigoity?

SUGGESTED ANSWER:      **Yes.**

II.  Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted because the record does not contain sufficient evidence for a jury to conclude that the Defendants, Father Eric Ensey, Father Carlos Urrutigoity, and the Society of St.  John, acted as the agent of the Defendants, Bishop Timlin and the Diocese, making Bishop Timlin and the Diocese responsible for their alleged actions?

SUGGESTED ANSWER:      **Yes.**

III. Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to Count Five and Six of Plaintiffs' Complaint to the extent that said claims are based on the alleged assaults and

3

batteries committed by the Defendants, Father Ensey and Father Urrutigoity, on the minor Plaintiff, John Doe, at St. Gregory's Academy in 1998 and 1999?

SUGGESTED ANSWER:　　　**Yes.**

IV.　Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to Count Five of Plaintiff's Complaint because the record does not contain sufficient evidence for a jury to conclude that the Defendants, Bishop Timlin and the Diocese, committed extreme and outrageous conduct which intentionally and recklessly caused severe emotional distress to the Plaintiffs?

SUGGESTED ANSWER:　　　**Yes.**

V.　Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to Count Six because the record does not contain sufficient evidence for a jury to conclude that (1) Plaintiffs were near the scene of an accident or negligent act perpetrated by the Defendants, Bishop Timlin and the Diocese; (2) that shock or distress resulted to the Plaintiffs from a direct emotional impact caused by the sensory or contemporaneous observance of the accident as opposed to learning of the accident from others after its occurrence; and (3) that they are closely related to the injured victim.

SUGGESTED ANSWER:　　　**Yes.**

VI.　Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to Count Eight of Plaintiff's Complaint because the record does not contain sufficient evidence for a jury

4

to conclude that the Plaintiffs are entitled to recover from Defendants, Bishop Timlin and the Diocese, under the theory of in loco parentis?

SUGGESTED ANSWER:        **Yes.**

VII.   Should the Motion for Summary Judgment of Defendants, the Diocese of Scranton and Bishop Timlin, be granted as to the Ensey/St. Gregory's claims because said claims are barred by the statute of limitations?

SUGGESTED ANSWER:        **Yes.**

## ARGUMENT

### I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). In determining what is a genuine issue of material fact, the court "must look to the governing substantive law and what disputed over facts would affect the outcome of the suit under that law." Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke, 947 F.2d 83, 87 (3d Cir. 1991). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believe to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 81 L.Ed.2d 265 (1986). When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden may be discharged by

pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e ).

**II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON COUNT TWO OF PLAINTIFFS' COMPLAINT BECAUSE THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THEY WERE NEGLIGENT.**

Count II of Plaintiffs' Complaint alleges that the Diocese of Scranton and Bishop Timlin had an obligation of vigilance in regard to the Society of St.  John as a clerical association of the Diocese, and that the Diocese and Bishop Timlin were negligent in this duty.

In order for the Diocese and Bishop Timlin to be found to be negligent, it must be determined that Bishop Timlin and the Diocese knew or should have known that Father Ensey and/or Father Urrutigoity were predisposed to engage in improper behavior.  An employer can be held liable if the plaintiff can prove "that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of the [employee]."  Hutchison v.  Luddy, 742 A.2d 1052, 1057, citing Dempsey v. Walso Bureau, Inc., 431 Pa.  562, 246 A.2d 418 (1968), applying Restatement of Torts 2d, §317.  The court in Dempsey determined that two inquiries were necessary to determine if there is enough evidence in the record to satisfy the requirements of §317: (1) what was the employee's conduct prior to the incident at issue and was it of such a nature as to indicate a propensity for danger to others; and (2) did the employer know or, in the exercise of ordinary care, should it have known of the employee's prior conduct.  Dempsey, 431 Pa.  at 570-71, 246 A.2d at 422.

6

The record is devoid of any evidence that either Bishop Timlin or the Diocese of Scranton knew or should have known that Father Ensey was predisposed to engage in improper behavior.  Prior to 2001, neither Bishop Timlin nor the Diocese of Scranton received any complaints or notice of improper sexual activity by Father Ensey.  S.M.F. 26.

Bishop Timlin had received notice of alleged improper activity by Father Urrutigoity, but immediately began an investigation into the allegations, and further submitted the investigation to the Diocese of Scranton independent Review Board.  The Review Board was unable to conclude whether Father Urrutigoity had committed any alleged improper activity.  Based on the decision of the Board, Bishop Timlin did not take any action against Father Urrutigoity.  Thus, it is clear that the record does not contain any evidence that Bishop Timlin or the Diocese knew, or should have known, that either Father Ensey or Father Urrutigoity was predisposed to be engaged in improper behavior with the Plaintiff.  As such, under Hutchison v. Luddy, supra, neither the Bishop nor the Diocese can be liable for the improper actions of Father Ensey or Father Urrutigoity.

Moreover, the First Amendment to the United States Constitution prohibits a Court or a jury from inquiring into or concluding that the actions of Bishop Timlin or the Diocese could establish the basis of a cause of action in negligence.  Matters concerning the hiring, retention and supervision of clergy, as well as the investigation of complaints concerning the clergy, are fundamentally connected to issues of church governance.  A court review of such claims would necessitate inquiry into church doctrine or policies and foster excessive entanglement with religion, and is, therefore, barred by the First Amendment.  See e.g. Ayon v. Gourley, 47 F.Supp.2d 1246, 1249

7

(D.Colo. 1998) (the decision who may become or remain a priest involves an inquiry into church doctrine or practices concerning a priest is barred on First Amendment Grounds); Mulinix v. Mulinix, 1997 W.L. 585775 (D.Minn. 1997).   (A claim for negligent retention and supervision of a clergyman, as well as claims how church investigates and resolves complaints about clergy, are fundamentally connected to issues of church governs making them ecclesiastical concerns.   Therefore, the District Court was corrected in concluding that the claims are barred by the First Amendment.)   Isely v. Capuchin Province, 888 F.Supp. 1138, 1150-51 (E.D. Mich. 1995) (Inquiry into the decision who should be permitted to become or remain a priest necessarily would involve excessive entanglement with religion prohibited by the First Amendment to the United States Constitution) Dausch v. Ryske, 1993 W.L. 34873 (N.D.Ill. 1993) (Any inquiry into the policies and practices of church defendants in hiring and supervising their clergy is barred by the First Amendment because it might foster excessive entanglement with religion).

Because the record does not contain any competent evidence of any negligence of Bishop Timlin or the Diocese that resulted in the alleged assaults committed by Father Ensey and Father Urrutigoity upon the Plaintiff, Bishop Timlin and the Diocese request summary judgment in their favor.

**III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON COUNT FOUR OF PLAINTIFFS' COMPLAINT BECAUSE THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE DEFENDANTS, FATHER ERIC ENSEY AND FATHER CARLOS URRUTIGOITY, WERE ACTING AS THEIR AGENTS.**

Count IV of Plaintiffs' Complaint alleges that Defendants, Society of St. John, Father Ensey and Father Urrutigoity, acted as agents of the Diocese of Scranton, and that because of this agency relationship, the Diocese is liable for the acts of

Defendants Ensey and Urrutigoity.   Even if the Court determines that there is evidence in the record to suggest that Father Ensey and Father Urrutigoity engaged in any improper behavior, there is nothing in the record to suggest that the Diocese of Scranton is liable for the alleged acts of Father Ensey or Father Urrutigoity.

The existence of an agency relationship is determined from the individual facts of each case, and when the facts are undisputed, is properly determined by a court as a matter of law.  Under Pennsylvania law, "the basic elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'"   M.B. ex rel. T.B. v. City of Philadelphia, 2003 WL 1144307, *2 (E.D. Pa. 2003).  See, Scott v. Purcell, 490 Pa. 109, 415 A.2d 56, 60 (Pa. 1980) (quoting Restatement (Second) of Agency §1, cmt. b (1958) and Chalupiak v. Stahlman, 368 Pa. 83, 81 A.2d 577, 580 (Pa. 1951)).  An agency relationship can be found "if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary."   Smilach v. Westfall, 440 Pa. 409, 269 A.2d 476, 481 (Pa. 1970) (citing Rosenberg v. Cohen, 370 Pa. 507, 88 A.2d 707 (Pa. 1952) and Restatement (Second) of Agency §1, cmts. a and b (1958)).

Under Pennsylvania law, the general rule is if an agency relationship is found, the knowledge of an agent who is acting within the scope of his authority can be imputed to the principal. See Field v. Omaha Standard, Inc., 582 F.Supp. 323, 327 (E.D. Pa. 1983) (citing Higgins v. Shenango Pottery Co., 256 F.2d 504, 510 (3d Cir.1958)).

A determination of an agency relationship, however, does not necessarily implicate the principal's vicarious liability for an agent's negligent acts. See Smilach,

9

269 A.2d at 481. Central to the determination of whether an agency relationship implicates vicarious liability are the degree of control and right of control of the principal over the agent's authority. See Id.  "The right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times.... Further, the principal has power to revoke the agent's authority, although this would constitute a breach of his contract with him.... The control of the principal does not, however, include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective." Commonwealth v. Minds Coal Mining Corp., 360 Pa. 7, 60 A.2d 14 (1948), citing Restatement (Second), Agency §14, comment a.  Since an agent who is not a servant is not subject to any right of control by his principal over the details of his physical conduct, the responsibility rests upon the agent alone, and the principal is not liable, for harm caused by his unauthorized negligent physical conduct.  Restatement (Second), Agency §250 (1958).  Thus, it has long been said to be the general rule that there is no vicarious liability upon the principal in such case.  Prosser, The Law of Torts §70 (3d ed. 1964).

The court in R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 -700 (Pa. Super. 2000), citing  Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 410 A.2d 1270 (1979), held that Pennsylvania law concerning the extent to which an employer is vicariously liable for the actions of its employee is well- established and crystal clear: "It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the

10

employment." 410 A.2d at 1271.  In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. Id.

The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.  Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. Fitzgerald, 410 A.2d at 1272.  See McMaster v. Reale, 177 Pa. Super. 429, 431, 110 A.2d 831, 832 (1955) (holding that "a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof.")  Moreover, our courts have held that an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment. Id.  See also, Potter Title & Trust Co. v. Knox, 381 Pa. 202, 207, 113 A.2d 549, 551 (1955) (finding acts committed by employee in an outrageous or whimsical manner are not within the scope of employment).

In Costa v. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa.Super. 1998), the court affirmed a grant of summary judgment for the defendant hospital whose employee had assaulted the plaintiff security guard when the employee was being required to submit to a drug test. The court found as a matter of law that the

11

employee's assault, which occurred during work hours and at the place of employment, was not within the scope of employment, both because it was completely unrelated to the nature of the employment and because it was in no way actuated by a purpose of serving the employer.  Pennsylvania's Commonwealth Court reached the same conclusion in <u>Sanchez by Rivera v. Montanez</u>, 165 Pa.  Commw. 381, 645 A.2d 383 (1994).  In <u>Sanchez</u>, a child and his parents sued a community action agency whose employee, a day care worker, had molested the child. Plaintiffs alleged that the agency was vicariously liable. The Commonwealth Court summarily dismissed this argument, finding that the employee's actions were clearly outrageous and motivated by purely personal reasons.   Clearly, any alleged improper sexual behavior by Defendants, Father Urrutigoity and Father Ensey, is outside the scope of employment by the Diocese of Scranton.

Even if the Court finds there is evidence in the record to support Plaintiffs' allegations as to Defendants, Father Ensey and Father Urrutigoity, the law is clear that an employer cannot be vicariously liable for actions of an employee which are clearly outside the scope of employment.   Therefore, Defendant, the Diocese of Scranton, respectfully requests this Court grant its motion for summary judgment as to Count Four of Plaintiffs' Complaint.

**IV.**   **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON COUNTS FIVE AND SIX OF PLAINTIFFS' COMPLAINT TO THE EXTENT THAT THEY ARE BASED ON THE ALLEGED ASSAULTS AND BATTERIES COMMITTED BY DEFENDANTS, FATHER ENSEY AND FATHER URRUTIGOITY, BECAUSE THE DAMAGES FROM THE INJURIES RESULTING FROM SAID ASSAULTS AND BATTERIES ARE RECOVERABLE IN COUNTS ONE AND TWO OF THE COMPLAINT.**

The first cause of action contained in Plaintiffs' Complaint is filed against the Defendants, Father Ensey and Father Urrutigoity.   It alleges that the Defendants,

Father Ensey and Father Urrutigoity, committed assaults and batteries on the minor Plaintiff, John Doe, at St. Gregory's Academy between May of 1998 and May of 1999 and at Shohola in October and November of 1970.   In Count Two of the Complaint, the Plaintiffs allege that the Defendants, Diocese of Scranton and Bishop Timlin, are legally responsible for the damages to the Plaintiffs arising out of said alleged assaults and batteries committed by the Defendants, Father Ensey and Father Urrutigoity on the theory that they were somehow negligent in allowing them to occur.   In Counts Five and Six of the Complaint, Plaintiffs seek to recover for emotional distress from all Defendants, including Bishop Timlin and the Diocese.   In these counts, Plaintiffs allege that the acts of the Defendants which caused the emotional distress were the assaults and batteries committed by the Defendants, Father Ensey and Father Urrutigoity.

At this point, it is important to discuss briefly the difference between the torts of assault, battery, and infliction of emotional distress.   Under Pennsylvania law, a claim of assault and battery actually comprises two separate tort theories.   To prove a claim of assault, a plaintiff must show that a defendant intentionally caused an imminent apprehension of harmful or offensive bodily contact.   <u>Lakits v. York</u>, 258 F.Supp.2d 401, 407 (E.D. Pa. 2003); <u>Sides v. Cleland</u>, 436 Pa. Super 618, 648 A.2d 793, 796 (1994); Restatement (Second) of Torts §21.   To prove a claim of battery, a plaintiff must establish that a defendant intended to cause harmful or offensive contact to plaintiff or an imminent apprehension of such contact to plaintiff and that such conduct with plaintiff resulted.   <u>Lakits v. York</u>, 258 F.Supp. at 407; <u>Friter v. Iolab Corp.</u>, 414 Pa. Super 622, 607 A.2d 1111, 1115 (1992); Restatement (Second) of Tort §18.

13

Though the Supreme Court of Pennsylvania has never specifically recognized the torts of intentional infliction of emotional distress and negligent infliction of emotional distress, many of the various courts of the Third Circuit and the lower courts in Pennsylvania have recognized said torts as separate and distinct torts from the torts of assault and battery.  Restatement (Second) of Torts §46, comment B. The injury dealt with in such torts, however, is the mental or emotional harm that is caused by the acts of another and that is not directly brought about any physical injury.  Consolidated Rail Corp. v. Gottshal, 512 U.S. 532, 114 S.Ct. 2396, 2405, 129 L.Ed.2d 427 (1994).  The injuries resulting from a harmful contact, such as an assault or battery, are recoverable in an action based on those torts.  Id.  Thus, any claim that the plaintiffs have to recover for physical injury or emotional distress arising out of the assaults and batteries allegedly committed by the Defendants, Father Ensey and Father Urrutigoity, are recoverable in the assault and battery and negligence claims contained in Counts One and Two of the Complaint and not in the infliction of emotional distress claims contained in Counts Five and Seven.

Defendants, Bishop Timlin and the Diocese, request, therefore, that Summary Judgment be granted with respect to the infliction of emotion distress claims contained in Counts Five and Six of the Complaint to the extent that the Plaintiff seeks to recover any emotional distress arising out of the alleged assaults by Defendants, Father Ensey and Father Urrutigoity.

There is no specific indication in either Count Five or Count Six of the Complaint that the Plaintiffs are seeking to recover damages for emotional distress from Defendants, Bishop Timlin or the Diocese, arising out of any acts, other than the assaults and batteries allegedly committed by Father Ensey and Father Urrutigoity.

14

The only other actions alleged, with respect to Bishop Timlin or the Diocese, even contained in the Complaint, are those concerning the investigation performed by the Diocese into the allegations made that Father Urrutigoity had assaulted a seminarian, Matthew Selinger, in 1997 while on a trip from Minnesota to Missouri.  Thus, in order to ensure that all conceivable claims of the Plaintiff are covered by this Brief, Sections IV and V will analyze the Plaintiff's emotional distress claims in relation to the Selinger matter.

**V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON COUNT FIVE OF PLAINTIFFS' COMPLAINT ON THE GROUNDS THAT THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE DEFENDANTS INTENTIONALLY INFLICTED EMOTIONAL DISTRESS UPON THE PLAINTIFFS.**

Count V of Plaintiffs' Complaint alleges that the Diocese of Scranton and Bishop Timlin caused intentional infliction of emotion distress upon the Plaintiffs. The Pennsylvania Superior Court has held that such a claim will lie where "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."  Robinson v. May Dept. Stores Co., 246 F.Supp.2d 440, 444 (E.D. Pa. 2003) (citing Wilder v. United States, 230 F.Supp.2d 648, 2002 WL 31496349, (2002) (citing Atamian v. Assadzadeh, Civ. A. No. 00-3182, 2002 WL 538977 (E.D.Pa. April 9, 2002), 2002 U.S. Dist. LEXIS 6269 (quoting Hunger v. Grand Cent. Sanitation, 447 Pa.Super. 575, 670 A.2d 173, 177 (1996) and Restatement (Second) of Torts, §46))).

"Extreme and outrageous" conduct is "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

15

<u>Atamian</u>, 2002 WL 538977 at *5. Generally, the case must be one with respect to which "the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Id</u>. (citing <u>Kazatsky v. King David Memorial Park</u>, 515 Pa. 183, 527 A.2d 988, 994-95 (Pa.1987)).

A plaintiff must also establish physical injury or harm and in order to recover on a claim of intentional infliction of emotional distress, the plaintiff must prove the existence of the alleged emotional distress by "competent medical evidence." <u>Kazatsky</u>, 527 A.2d at 995.  Finally, Pennsylvania courts have repeatedly indicated that the individual suffering the distress must be present when the outrageous conduct is directed at a third person.  <u>Johnson v. Caparelli</u>, 425 Pa. Super. 404, 413, 625 A.2d 668, 672 (Pa. Super. 1993).

None of the Plaintiffs were present for, or in fact, had any involvement with, the Selinger complaint, the alleged improper behavior leading thereto or the diocesan investigation into the matter.  Nor does the record contain any evidence that the Plaintiffs knew of these matters at, or about, the time they were occurring.  Thus, it is clear that the record does not support any claim that the Plaintiff suffered any emotional distress arising from the Selinger matter.

Moreover, the actions of Defendants, the Diocese and Bishop Timlin, were not outrageous.  Bishop Timlin and the Diocese followed Church policy in investigating the claims against Father Urrutigoity.  Upon conclusion of the investigation, Bishop Timlin, accepted the Review Board's conclusion that there was no basis to the allegations against Father Urrutigoity.

16

Even where a defendant's conduct is outrageous, however, a plaintiff still must prove through expert medical testimony that she actually suffered the claimed distress. Paves v. Corson, 765 A.2d 1128, 1134 (Pa.Super.,2000), citing Kazatsky, supra at 196, 527 A.2d at 995. "Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries." Id. Where no such testimony is presented, and where the record reflects that the plaintiffs did not seek medical assistance as a result of the alleged tortious conduct, there can be no recovery for intentional infliction of emotional distress.  Id. See also Hackney v. Woodring, 539 Pa. 266, 652 A.2d 291 (1994).  Plaintiffs have not built a record that includes reliable testimony that they sustained emotional distress as a result of the alleged improper investigation of the Selinger complaint.  Absent such record, Defendants are entitled to summary judgment as to Plaintiffs' claim for intentional infliction of emotional distress.

**VI.  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C.  TIMLIN, ON COUNT SIX OF PLAINTIFFS' COMPLAINT ON THE GROUNDS THAT THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE DEFENDANTS NEGLIGENTLY INFLICTED EMOTIONAL DISTRESS UPON THE PLAINTIFFS.**

Count V of Plaintiffs' Complaint alleges that the actions or inactions of the Diocese of Scranton and Bishop Timlin resulted in negligent infliction of emotion distress upon the Plaintiffs.

In Pennsylvania, the cause of action for negligent infliction of emotional distress has been limited by court decisions.  To establish a claim of negligent infliction of emotional distress under Pennsylvania law, a plaintiff must prove that: (1) he or she was near the scene of an accident or negligent act; (2) shock or distress resulted from a direct emotional impact caused by the sensory or contemporaneous

observance of the accident, as opposed to learning of the accident from others after its occurrence; and (3) he or she is closely related to the injured victim.  Smith v. School Dist. of Philadelphia, 112 F.Supp.2d 417, 428 (E.D. Pa. 2000) (citing Sinn v. Burd, 486 Pa. 146, 170-71, 404 A.2d 672, 685 (1979); Frempong-Atuahene v. Redevelopment Auth. of Phila., 1999 WL 167726, * 7 (E.D. Pa.1999)).  In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm.  Were there no such limitations placed on the theory of negligent infliction of emotion distress, then any conduct that causes emotional upset to another would support a cause of action and a law suit.  Doe v. Philadelphia Community Health Alternatives AIDS Task Force,  745 A.2d 25, 27 -28 (Pa. Super. 2000).

Plaintiffs did not suffer immediate and substantial physical harm from the actions of inactions of Defendants, the Diocese of Scranton and Bishop Timlin. Plaintiffs allege that Defendants, the Diocese and Bishop Timlin, were negligent in their supervision of the other Defendants, and in their investigation into the allegations against Father Urrutigoity.  There is absolutely no evidence of any sensory or contemporaneous observance of the actions of the Diocese and Bishop Timlin by Plaintiffs.  The investigation into the allegations against Father Urrutigoity took place in April 1999.  The alleged incident took place on a 1997 trip between Minnesota and Missouri.   The other alleged incident involving Father Urrutigoity took place in Argentina.   Neither of these alleged incidents involved Plaintiff Doe or his parents. There is nothing in the record to indicate that any alleged negligence on the part of the Defendants, the Diocese and Bishop Timlin, in investigating the allegations against Father Urrutigoity, took place in the presence of any of the Plaintiffs.

18

Because there is nothing in the record indicating Plaintiffs' contemporaneous observance of any negligent act on the part of the Defendants, Defendants, the Diocese of Scranton and Bishop Timlin, respectfully submit that the Court should grant their motion for summary judgment as to Count Six of Plaintiffs' Complaint.

**VII.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON COUNT SEVEN OF PLAINTIFFS' COMPLAINT ON THE GROUNDS THAT THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE DEFENDANTS WERE LIABLE TO THE PLAINTIFFS ON A THEORY OF IN LOCO PARENTIS.**

The phrase in loco parentis refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption.  L.S.K. v. H.A.N., 813 A.2d 872, 876 (Pa. Super. 2002); citing T.B. v. L.R.M., 567 Pa. 222, 228, 786 A.2d 913, 916 (2001).  The status of in loco parentis embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.  Id.  Existence of such a relationship is largely dependent upon the intention of the person assuming the parental status.  Klein v. Sarubin, 324 Pa. Super. 363, 368 , 471 A.2d 881, 883 (Pa. Super. 1984); citing, D'Auria v. Liposky, 197 Pa. Super. 271, 177 A.2d 133 (1962)[1].

---

[1] See also, Cardamone v. Elshoff, 442 Pa.Super. 263, 275-276, 659 A.2d 575, 581 (Pa. Super,1995); see also, Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968); see also, Vicki N. v. Josephine N., 437 Pa. Super. 166, 649 A.2d 709 (1994) (maternal aunt); Karner v. McMahon, 433 Pa. Super. 290, 640 A.2d 926 (1994) (stepfather); Rosado v. Diaz, 425 Pa.Super. 155, 624 A.2d 193 (1993) (de facto stepmother); Wilson v. Wilson, 406 Pa. Super. 473, 594 A.2d 717 (1991) (foster parent); Mitch v. Bucks County Children & Youth Social Service Agency, 383 Pa. Super. 42, 556 A.2d 419 (1989) (prospective adoptive parents); Burke v. Pope, 366 Pa.Super. 488, 531 A.2d 782 (1987) (non-relative); Spells v. Spells, 250 Pa. Super. 168, 378 A.2d 879 (1977) (foster parents); cf. Van Coutren v. Wells, 430 Pa.Super. 212, 633 A.2d 1214 (1993) (paternal grandfather where he never had custody of child); Gradwell v. Strausser, 416 Pa.Super. 118, 610 A.2d 999 (1992) (paternal grandfather where child lived with grandfather and natural parents).

Nothing in the record reflects that Defendants, Diocese of Scranton and Bishop Timlin ever assumed parental status of the Plaintiff.   There is no evidence in the record which indicates that either the Diocese or Bishop Timlin ever <u>intended</u> at any time to assume parental status of the Plaintiff.   Moreover, the record is absolutely devoid of any evidence that at any time Plaintiff Doe's parents ever discharged their duties as parents.

Because there is a complete absence of evidence in the record that Defendants, Diocese of Scranton and Bishop Timlin ever assumed, or even intended to assume parental status of the Plaintiff, and furthermore, there is no evidence in the record that Plaintiff's parents intended to or did at any time discharge their parental duties, Defendants, Diocese and Bishop Timlin, respectfully request this Court grant their Motion for Summary Judgment and dismiss Count VIII of Plaintiffs' Complaint.

Additionally, this Court dismissed Count VIII of the Plaintiffs' Complaint, when it adopted Magistrate Judge Smyser's Report and Recommendation on the Motion to Dismiss of Defendants, Father Ensey, Father Urrutigoity, and the Society of St.  John. Magistrate Judge Smyser recommended that Count Eight be dismissed because it is subsumed by Counts Two and Three of Plaintiffs' Complaint, which state negligence claims against the defendants.  To the extent that this Court dismissed Count Eight of Plaintiffs' Complaint only as to the moving Defendants, Defendants, the Diocese of Scranton and Bishop Timlin, respectfully submit that this Court should grant their motion for summary judgment for the reasons set forth above.

**VIII.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C.  TIMLIN, ON COUNT FIVE OF PLAINTIFFS' COMPLAINT ON THE CLAIMS OF THE MINOR PLAINTIFF BECAUSE THE RECORD ESTABLISHES THAT SAID CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

The Plaintiff alleges that the Defendant, Father Ensey, sexually assaulted him on numerous occasions between May of 1998 and May of 1999, when he was a minor and a student at St. Gregory's. S.M.F. 14. He also alleges that Defendants, Father Urrutigoity and Father Ensey, each sexually assaulted him on two or three other occasions in September and October of 2000 when he was at Shohola, Pennsylvania. S.M.F. 15. The Ensey/St. Gregory's claims occurring in May 1998 and May 1999 occurred when Plaintiff was a minor. The Ensey/Shohola and Urrutigoity/Shohola claims, which occurred in Fall 2000, occurred when the Plaintiff was an adult.

At the time the Ensey/St. Gregory claims arose, the statute of limitations on personal injury claims was two years. 42 Pa.C.S.A. §5524. The law also provided that, if an individual entitled to bring an action was an unemancipated minor at the time the action arose, the period of minority should not be deemed a portion of the time period within which the action must be commenced. 42 Pa.C.S.A. §5533(b)(1)(I).

The applicable statute of limitations was amended by P.L. 518, No. 86, to allow for 12 years after attaining the age of majority in which to commence an action for childhood sexual abuse. Specifically, the relevant portion of the applicable statute of limitations states:

> (2) (I) If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the childhood sexual abuse.

> 42 Pa.C.S.A. §5533(b)(ii)(2)(I).

21

Section 3 of 2002, June 28, P.L. 518, No. 86, effective in 60 days, provides "[t]he amendment of 42 Pa.C.S.A. §5533(b) shall not be applied to revive an action which has been barred by an existing statute of limitations on the effective date of this act." 2002 Pa. Legis. Serv. Act 2002-86.

Plaintiffs instituted this action on March 20, 2002.  Plaintiff Doe reached the age of majority on May 16, 1999.  The statute of limitations regarding childhood sexual abuse was not amended until June 28, 2002, and the amendment did not become effective for 60 days after that date.  Plaintiffs' claims are governed by the prior statute of limitations, which required that such claims be filed within <u>two years</u> of a claimant reaching the age of majority.  The public law amending §5533(b)(ii)(2)(I) clearly indicates that the statute is not to be applied retroactively.

Thus, the statute of limitations on the Ensey/St.Gregory's claims, all of which occurred May 1998 and May 1999, when Plaintiff was a minor, ran out on May 16, 2001, two years after he reached adulthood.  Because Plaintiffs failed to institute this action for almost one year after the statute of limitations ran, Defendants', the Diocese of Scranton and Bishop Timlin's motion for summary judgment should be granted as to Plaintiffs' claims regarding the Ensey/St. Gregory's incidents arising between May 1998 and May 1999.

Finally, it is anticipated that Plaintiffs will aver that Pennsylvania's statute of limitations does not apply in this case because some of the events alleged in Plaintiffs' Complaint took place in another state.  However, even if this Court makes inferences in favor of the Plaintiff, and assumes that the alleged conduct accrued in other states and a conflict of law with Pennsylvania does exist, the Plaintiff cannot avail himself of a more lenient statute of limitations rule.  The caselaw is clear that

22

in a diversity case, the Court is to apply the forum state's choice of law rules. Hartz v. Diocese of Greensburg, 94 Fed.Appx. 52, 55, 2004 WL 637137, *2 (3d Cir. 2004); citing Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir.1985). Pennsylvania's borrowing statute provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. C.S.A. §5521(b) (emphasis added). Thus, no conflict-of-law analysis is necessary, and this Court should apply Pennsylvania's accrual rule.

Defendants, Diocese of Scranton and Bishop Timlin, request, therefore, that the Court grant their motion for summary judgment as to all claims of the minor Plaintiff arising out of the Ensey/St. Gregory incidents which occurred between May 1998 and May 1999, on the grounds that said claims are barred by the Pennsylvania statute of limitations.

**IX.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN, ON ALL CLAIMS OF THE ADULT PLAINTIFFS BECAUSE THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE ELEMENTS OF SAID CLAIMS HAVE BEEN ESTABLISHED.**

Plaintiff also alleges that he was assaulted by Father Ensey and Father Urrutigoity at Shohola in the fall of 2000. These claims arose after he reached adulthood and over a year after he graduated from St. Gregory. S.M.F. 7. He traveled to Shohola with the intent of entering a school to be established by the Society of St. John. S.M.F. 10. He voluntarily remained there after being told he was ineligible to enter the school because he did not wish to study for the priesthood. S.M.F. 11. He claims that Father Ensey and Father Urrutigoity, each on two or three

separate occasions, fondled him while he was sleeping with them in their beds.  He does not claim that he was in any way compelled to sleep with them in their beds. S.M.F. 15.

Consent is an affirmative element of the tort of battery.  Plaintiffs must prove as a constituent element they did not consent to the tortious conduct. <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 147 -148 (3d Cir. 1998); see <u>Levenson v. Souser</u>, 384 Pa. Super. 132, 557 A.2d 1081, 1088 (Pa. Super. 1989); Prosser & Keeton §18, at 113 ("Consent avoids recovery simply because it destroys the wrongfulness of the conduct as between the consenting parties, however harmful it might be to the interests of others."); Restatement (Second) of Torts §892A ("One who effectively consents to the conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for the harm resulting from it.") Express consent may be given by words or affirmative conduct and implied consent may be manifested when a person takes no action, indicating an apparent willingness for the conduct to occur. Restatement (Second) of Torts §892 cmt. b & c. The consent must be to the "defendant's conduct, rather than to its consequences." Prosser & Keeton §18, at 118. A plaintiff's consent is not effective if "the consenting person was mistaken about the nature and quality of the invasion intended by the conduct." Prosser & Keeton §18, at 114.

Based on the above, it is clear that the record does not establish that the plaintiff did not consent to the incidents at Shohola.  Thus, Defendants, the Diocese and Bishop Timlin, respectfully request that this Court grant their motion for summary judgment as to the Ensey/Shohola and the Urrutigoity/Shohola claims.

24

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that summary judgment must be entered in favor of Defendants, the Diocese of Scranton and Bishop Timlin, and against the Plaintiffs.

Respectfully submitted,

s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
P.O. Box 240
Clarks Summit, PA 18411
Tel: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

s/James E. O'Brien, Jr.
James E. O'Brien, Jr., Esquire
KENNEDY, O'BRIEN, McCORMACK & MULCAHEY
Attorney I.D. No.: 18888
Scranton Life Building, Suite 504
538 Spruce Street
Scranton, PA 18503-1808

/s/ Karoline Mehalchick
Karoline Mehalchick, Esquire
Attorney I.D. No. PA87641
Oliver, Price & Rhodes
1212 South Abington Road
PO Box 240
Clarks Summit, PA 18411
Tel: 570-585-1200
Fax: 570-585-5100
E-mail: km@oprlaw.com

*Attorneys for Defendants, Diocese of Scranton and Bishop James C. Timlin*

25

**CERTIFICATE OF SERVICE**

I, **Joseph A. O'Brien, Esquire**, of Oliver, Price & Rhodes, hereby certify that on the 10th day of June, 2004, I served a true and correct copy of the foregoing BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, DIOCESE OF SCRANTON AND BISHOP JAMES C. TIMLIN on all interested counsel:

James M. Bendell, Esquire
PO Box 587
Port Townsend, WA 98368

Harry T. Coleman, Esquire
Courthouse Square Law Offices
148 Adams Avenue
Scranton, PA 18503

Sal D. Cognetti, Jr., Esquire
Foley, Cognetti, Comerford & Cimini
Scranton Electric Building, Suite 700
507 Linden Street
Scranton, PA 18503-1635

Joseph F. Lesson, Jr., Esquire
70 East Broad Street
PO Box 1426
Bethlehem, PA 18016-1426

s/ Joseph A. O'Brien
Joseph A. O'Brien, Esquire

26