IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, JOHN DOE, SR. and JANE DOE, <br><br>             Plaintiff, <br>     vs. <br><br> FATHER ERIC ENSEY, FATHER CARLOS URRUTIGOITY, DIOCESE OF SCRANTON, BISHOP JAMES C. TIMLIN, THE SOCIETY OF ST. JOHN, THE PRIESTLY FRATERNITY OF ST. PETER and ST. GREGORY'S ACADEMY, <br><br>             Defendant. | Case No.: 3 CV 02-0444 <br><br>   Judge:  Hon. John E. Jones |

**BRIEF OF PLAINTIFFS IN OPPOSITION TO THE
MOTION FOR SUMMARY JUDGMENT FILED BY THE
PRIESTLY FRATERNITY OF ST. PETER AND ST. GREGORY'S ACADEMY**

For the convenience of the court plaintiffs will use the same numbering system utilized by defendants in their summary judgment motion.

I.   FACTUAL BACKGROUND

Plaintiff John Doe was a student attending St. Gregory's Academy, a boarding school operated by defendant Priestly Fraternity of St. Peter.   The school is located in the Diocese of Scranton.  At all material times hereto James Timlin was the Bishop of Scranton.

Fr. Eric Ensey and Fr. Carlos Urrutigoity were formally priests of the Society of St. Pius X.  They were expelled from that organization and eventually taken in by Bishop Timlin who allowed them to set up a diocesan organization known as the Society of St. John.  Bishop Timlin conducted no inquiry into the fitness or background of these priests. Neither did the Fraternity of St. Peter nor St. Gregory's Academy make such an inquiry.

The Society of St. John is what one Scranton priest has termed "a homosexual cult" (Exhibit 'V' – Deposition of Fr. Richard Munkelt, p 43)[1].

Eventually both priests sexually molested plaintiff John Doe.   The precise details of these events are referenced in the Argument below.

II.   QUESTIONS PRESENTED

A.   WHETHER A SCHOOL CHAPLAIN WHO MOLESTS A STUDENT CAN RENDER THE SCHOOL LIABLE WHETHER THE MOLESTATION TAKES PLACE ON OR OFF CAMPUS?

Suggested Answer: Yes.

B.   WHETHER LAW OF TORT PROVIDES A CAUSE OF ACTION FOR OFFENSIVE TOUCHING, INCLUDING MALE/MALE FORCED KISSING?

---

[1] This refers to plaintiffs' Exhibit 'V' used in their opposition to the Diocese's motion for summary judgment.  Exhibits attached to the instant motion are labeled with double letters, e.g., AA, BB, etc.

Suggested Answer: Yes.

C.     WHETHER THE LAW REGARDING LIABILITY ONLY APPLIES TO
       TORTS COMMITTED AGAINST MINORS.

Suggested Answer:  No.

D.     WHETHER A SCHOOL CAN BE LIABLE FOR TORTS COMMITTED
       AGAINST STUDENTS BY THE SCHOOL'S CHAPLAINS?

Suggested Answer:  Yes.

E.     WHETHER THE PRIESTLY FRATERNITY OF ST. PETER CAN BE
       HELD LIABLE WHEN IT FAILED TO CONDUCT ANY SCRUTINY OF
       ITS CHAPLAINS BEFORE ALLOWING THEM TO BE CHAPLAINS
       AT A BOY'S SCHOOL?

Suggested Answer:  Yes.

F.     WHETHER ANY OF THE PLAINTIFFS HAVE A CAUSE OF ACTION
       FOR INFLICTION OF EMOTIONAL DISTRESS.

Suggested Answer:  Yes.

III.   ARGUMENT

A.     A jury may lawfully find defendant Priestly Fraternity or St. Gregory's
       Academy liable for rape committed by Fr. Ensey in California.

Fr. Urrutigoity and Fr. Ensey were both chaplains of St. Gregory's Academy, a

school owned and operated by defendant Priestly Fraternity of St. Peter (Exhibit 'A' --

Timlin dep. pp. 117, Exhibit 'AA' – dep. Fr. Paul Carr, pp. 4, 6).   The Priestly Fraternity

made the priests of the Society of St. John chaplains of the school because they were

experiencing a shortage of priests (Exhibit 'BB' – dep. Fr. Arnaud Devillers, pp. 8, 9).

The Priestly Fraternity did not make a formal inquiry regarding these priests at the Society

of St. Piux X (hereinafter 'SSPX), from which these priests had been expelled (Ibid. pp.

11, 13).   In his deposition Fr. Devillers also testified that, about a year after the priests

became chaplains, he requested school headmaster Alan Hicks to perform a "criminal check" on the priests because it was the policy of the diocese of Scranton that the headmaster perform that task (Ibid. p. 13).   However, headmaster Alan Hicks testified that Fr. Devillers never requested him to perform any background checks on the priests (Exhibit 'CC' – dep. Alan Hicks, p. 17, 19, 78, 79).  Asked if he felt background checks were necessary, he replied, "I just didn't think about it" (Ibid. p. 17).   Hicks testified that the hiring of chaplains was not his job but the job of the Priestly Fraternity (Ibid. pp. 19 – 20).   So, Hicks thought it was Devillers' job and Devillers thought it was was Hicks' job.

St. Gregory's Academy was obviously careless in allowing its students to take trips for school or school-related purposes.  For example, headmaster Hicks allowed boys from the soccer team to take a trip to Canada with a man whom Hicks knew collected homosexual pornography (Hicks dep. pp. 87 – 90).

At page 4 of its brief, the Priestly Fraternity concedes that Fr. Ensey traveled with plaintiff John Doe, in part, to check into a Catholic college he was considering attending after graduation.    Therefore, the following facts are undisputed:

1.    John Doe is attending a Catholic boarding school.

2.    Fr. Ensey is a chaplain of the school.

3.    Fr. Ensey takes John Doe, a minor, to California to examine a Catholic college there.

How can it be seriously suggested that the torts committed by Fr. Ensey against John Doe while on this trip are not attributable to the school?

The Priestly Fraternity goes on to argue that the school cannot be liable because there is no Master/Servant relationship between Fr. Ensey and the school. *Venite nunc.* [2] This is a question for the jury. Bishop Timlin has stated publicly that the appointment of the Society of St. John priests as chaplains to the school was purely in the province of defendant Priestly Fraternity. For example, Timlin allowed the "Friends of the Society of St. John" website to post a message from him stating:

> The Society of Saint John, a clerical association of priests, lived at Saint Gregory's Academy, Elmhurst, from 1997 to 1998, and since then they have been located in Shahola, Pike County. At no time did I ever appoint any one of them to duties at the academy.

Exhibit 'DD'

Defendant Priestly Fraternity relies upon <u>Hutchison ex rel. Hutchison v. Luddy</u>, 742 A.2d 1052 (Pa. 1999) to support its assertion that it cannot be liable for the Fr. Ensey's sodomizing John Doe in California. However, the court in that case clearly distinguished the facts of that case from the case at bar when it stated:

> Similarly, in *Marquay v. Eno,* 139 N.H. 708, 662 A.2d 272 (1995), the Supreme Court of New Hampshire held that a school district that knew its employees were abusing children could be held liable for negligent hiring and retention: Liability exists not because of when the injury occurs, but because "the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct." [Citation omitted]. **Thus, employers have been held liable for criminal conduct by off-duty employees or former employees where such conduct was consistent with a propensity of which the employer knew or should have known, and the association between the plaintiff and the employee was occasioned by the employee's job.** [Citations omitted] [emphasis added]

742 A.2d at 1058 - 1059

In the case at bar, Fr. Ensey's trip to California with John Does was, in part, for the purposes of checking out a Catholic college that John Doe planned to attend after high

---

[2] "Oh come now"

school (Doe, in fact, did go on to matriculate at St. Thomas Aquinas College). Therefore, under Pennsylvania law, a jury may legitimately find defendant Priestly Fraternity liable for the rape committed by Fr. Ensey in California.

        B.    <u>The Priestly Fraternity of St. Peter and St. Gregory's Academy can be held liable for batteries committed by defendant priests Ensey and Urrutigoity</u>

A battery is any unlawful touching of another. Only minimal offensive touching is required, <u>Torts 39</u>, Prosser & Keaton (5th ed. 1984). Even normal, heterosexual kissing, if unwanted, can be the basis of sexual harassment claims, *See e.g.*, <u>Marmer v. Unicco Service Co.</u>, 2003 WL 22462053 (E.D. Pa., 2003). At pages 77 and 78 of his deposition John Doe describes the disgusting episode in which Fr. Ensey got Doe drunk, forced himself on Doe and jammed his tongue into his mouth. The priests of the Fraternity of St. Peter apparently do not view this as "offensive touching", and thus not actionable in tort. This contention does not merit serious discussion.

        C.    <u>The claims against Fr. Urrutigoity for molestation of John Doe when he was an adult should not be dismissed</u>.

At pages 73 – 74 John Doe testified that he awoke and found Fr. Urrutigoity fondling him, and told Urrutigoity to stop. This happened several times over a period of days (<u>Ibid</u>). Defendants do not attempt to argue that there is no liability because these acts occurred between <u>consenting</u> adults. Rather, defendants argue that no liability can arise because the acts involved two adults. In other words, the priests of the Fraternity of St. Peter believe that, under the law of Pennsylvania, one man may grab the penis of another man without any possible tort liability. Fortunately for the citizens of Pennsylvania, the Priestly Fraternity cites no authority for this curious proposition. It should similarly be rejected by this court.

PLAINTIFFS' OPPOSITION TO PRIESTLY FRATERNITY OF
ST. PETER MOTION FOR SUMMARY JUDGMENT – PAGE 6

      D.      <u>The Priestly Fraternity of St. Peter and St. Gregory's Academy may be held liable for the sexual molestation committed by Fr. Ensey and Fr. Urrutigoity.</u>

At page 8 of defendants' brief it is alleged that the priests of the Society of St. John were simply allowed to stay at St. Gregory's Academy, and were kind enough to volunteer as part-time teachers.  However, this statement contradicts the testimony of the District Superior Fr. Arnaud Devillers, who testified that he made the Society priests chaplains of the school because the Priestly Fraternity had a shortage of priest (*supra* at 3).   Because the Society priests were working for the Priestly Fraternity in the role of chaplains for the boys' school, this created a master/servant relationship between these priests and the Priestly Fraternity.  The fact that the Society priests also taught classes at the school only strengthens the argument for the master/servant relationship.

      E.      <u>Ample evidence exists demonstrating the negligence of the Priestly Fraternity of St. Peter and St. Gregory's Academy, thus rendering them liable for the sexual molestation committed by Fr. Ensey and Fr. Urrutigoity.</u>

In <u>R.A. vs. First Church of Christ</u>, 748 A.2d 692 (Pa. Super. 2000), the Pennsylvania Superior Court wrote:

> As a panel of this Court opined in <u>Heller v. Patwil Homes, Inc.</u>, 713 A.2d 105 (Pa. Super. 1998), these Restatement[3] sections do no more than restate the existing tort law in Pennsylvania.  They impose on an employer the duty to exercise reasonable care in **selecting**, supervising and controlling employees. [emphasis added].

Defendants Priestly Fraternity and St. Gregory's Academy made no effort to scrutinize the background of the Society of St. John Priests (*supra* at 3).  Most importantly, they did not contract the SSPX, from whom these priests had been expelled (<u>Ibid</u>).   This omission is clear evidence of negligence.   The ultimate question of negligence is up to the jury.

---

[3] Referring to the Restatement of Torts.

PLAINTIFFS' OPPOSITION TO PRIESTLY FRATERNITY OF
ST. PETER MOTION FOR SUMMARY JUDGMENT – PAGE 7

Additional evidence exists concerning the negligence of the Priestly Fraternity. Attached hereto as Exhibit 'EE' is the deposition of Fr. Daniel Oppenheimer, a priest of the Fraternity of St. Peter now living in Wisconsin.   In that deposition Fr. Oppenheimer tries to explain away the explosive revelations that he made about the Priestly Fraternity of St. Peter in two emails that he sent to Catholic activist Jeffrey Bond (the emails are attached as Exhibits to Fr. Oppenheimer's deposition).    Fr. Oppenheimer comments include the following:

--     It is characteristic of an entire nexus of human dealings on Devillers' part that includes significant moral evil.
--     I left the Fraternity of Saint Peter because of criminal conduct, public cover-ups, an accommodation of immorality, on the part of the superiors.
--     FSSP [Fraternity of St. Peter] knowledge of what you have bravely and tenaciously sought to expose certainly predates Bishop Timlin's knowledge of the situation.
--     Urrutigoity's taste for boys was known at the FSSP headquarters and yet nothing was done, in true FSSP style, to rectify the situation other than covering it up.
--     If sexual impropriety was going on at Saint Gregory's Academy (like the middle of the night underpants séances) the onus sits with the leaders and mothpieces (sic) of the FSSP that did nothing to deal with it.
--     Last year, last spring, a young boy from Christendom College sat in the cloister of the monastery where I've been living these past two years and explained to me, with a perfectly straight face, why Carlos Urrutigoity's sleeping with teenage boys was perfectly acceptable.

The deposition of Mr. Joseph Sciambra was taken in this case (Exhibit 'FF').  Mr. Sciambra was formerly a postulant with the Society of St. John (p.  11). While with the Society he saw young men in underwear leaving Fr. Urrutigoity's room (p.  15). He knew that Fr. Urrutigoity shared sleeping bags with boys (pp.  20-21). He saw boys sleeping in Fr. Urrutigoity's bed (pp.  24 - 25).   He heard Fr. Urrutigoity describe himself as "soft and cuddly like a bear" (pp.  26 – 27).   He noted that Fr. Fullerton of the Society of St. John approved of the boys swimming openly in the nude, and that Fr. Fullerton told him "that a

lot of conservative or traditional Catholics have hang-ups about the body" (p. 31).   Fr.

Oppenheimer, who, as noted above, is a priest of the Fraternity of St. Peter, admitted to

Sciambra that there were sexual problems involving the priests and the boys at St.

Gregory's Academy (pp.  37 – 39).

The deposition of Mr. Paul Hornak was taken in this case (Exhibit 'GG').  Mr.

Hornak was employed as a teacher at St. Gregory's Academy (p.  6).   Mr. Hornak

resigned from the school and gave District Superior Fr. Arnaud Devillers this reason:

> Well, as I mentioned in the statement I strongly believe that the Society
> of Saint John had engaged Saint Gregory's boys in near homosexual
> activity throughout the term of their stay at school.

(Hornak dep. pp.  15 – 16).

Asked how Fr. Devillers took the news, Hornak testified:

> Well, he wasn't anywhere near shocked as I thought he might be.  He said
> that the Society of Saint John would change its ways when it was forced to
> fend for itself; that is, get away from the confines of the school and go it
> alone.  And he also mentioned that it was his belief that perhaps some of
> the things the Society did was intended to win the favor of the boys so as to
> bring them closer to God.

(Ibid)

F.   Although plaintiff John Doe may recover damages for infliction of
emotional distress, it is agreed that John Doe's parent may not recover
damages for emotional distress inflicted at the scene of the molestations of
John Doe.

G.   The court should not grant summary judgment based on the statute of
limitations.

The statute of limitations issue is normally a question for the jury.  Seto v.

Willits, 432 Pa. Super. 346, 638 A.2d 258 (1994).   A genuine issue of fact exists as to

when John Doe realized that he had been sexually molested by these priests.  A close

reading of John Doe's deposition (attached to The Fraternity of St. Peter's Motion for

Summary Judgment) makes it clear that he was under the influence of alcohol when these

acts occurred and that he was essentially kept in an alcoholic stupor at other times by Fr.

Ensey (p. 109).  At page 72 of his deposition Doe states "I had not fully come to grips with

the fact that I had been abused.  I had come to grips with certain events of the abuse, but

not the entirety of it."   Fr. Urrutigoity forbade John Doe from attending AA meetings (pp.

64, 193).   John Doe suffered from alcoholic blackouts (p. 100) and stated he often did not

remember things done when he was drinking (p. 101).  When asked why he didn't tell

people what happened he said, "The only reason I could think of why I would say that

would be if I either didn't remember or was trying to minimize what happened" (p. 106).

He drank heavily on the night he was sodomized by Fr. Ensey (p. 127 – 131).

        The second reason the case should not be dismissed is that there is, at minimum, a

genuine issue of fact as to when plaintiffs knew or should have known that they had a

cause of action against the Fraternity of St. Peter and St. Gregory's Academy.  This issue

involves a different analysis than the question of when plaintiffs knew or should have

known that they had a cause of action against Fr. Ensey and Fr. Urrutigoity (*See* the

recently decided Pennsylvania case A.L.M. vs. Diocese of Allentown (June 24, 2004))

attached as Exhibit 'N' to the plaintiffs' opposition to the Diocese's motion for summary

judgment.   After all, the institutional defendants in this case point out that not every tort

committed by an employee or agent gives rise to vicarious liability.   The acts of

negligence committed by the Fraternity of St. Peter and St. Gregory's Academy in failing

to even conduct a minimal check of the priests' past was unknown to the public at the time

that John Doe was molested.   Some of this information did not become known until late

2001/early 2002 when Catholic activist Jeffrey Bond began his internet and email campaign revealing the sordid history of Fr. Urrutigoity (Exhibit 'O').   The additional details did not become known until the depositions were taken in this case.   Therefore, all this information should go to the jury to allow them to determine when plaintiffs knew or should have known that the Fraternity of St. Peter and St. Gregory's Academy was negligent in the hiring of the Society priests to be chaplains at the school.

CONCLUSION

Plaintiffs are entitled to have this case tried to a jury.   Defendants have not demonstrated that the central claims of this case are susceptible to dismissal by summary judgment.

Dated this 16th day of July, 2004.

James Bendell, Co-counsel for Plaintiffs

I certify that I caused a true copy of
this pleading to be served by electronic
mail on Joseph O'Brien, Joseph Leeson
and Sal Cognetti on _7/__/_, 2004.

PLAINTIFFS' OPPOSITION TO PRIESTLY FRATERNITY OF
ST. PETER MOTION FOR SUMMARY JUDGMENT – PAGE 11