| | |
|---|---|
| JOHN DOE, JOHN DOE, SR. and JANE DOE, | Case No.: 3 CV 02-0444 |
| Plaintiff, | Judge: Hon. John E. Jones |
| vs. | |
| FATHER ERIC ENSEY, FATHER CARLOS URRUTIGOITY, DIOCESE OF SCRANTON, BISHOP JAMES C. TIMLIN, THE SOCIETY OF ST. JOHN, THE PRIESTLY FRATERNITY OF ST. PETER and ST. GREGORY'S ACADEMY, | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST FR. ERIC ENSEY

COME NOW Plaintiffs, by and through counsel, pursuant to Local Rule 37.1 and

Local Rules 83.1 *et seq*., and move this court for an order imposing sanctions against

defendant Eric Ensey for his willful obstruction of discovery in this matter. This motion is

based upon the memorandum below, the exhibits attached hereto, and pleadings previously

filed with the court.

On March 23, 2004, this court issued a Memorandum Opinion and Order regarding

the psychological evaluations of defendants Ensey and Urrutigoity. In that opinion the

court ordered Fr. Urrutigoity's records turned over to plaintiffs' counsel as part of

discovery. With regard to Fr. Ensey's records, the court deferred ruling until Fr. Ensey's

records from the Southdown Institute (in Canada) were sent to the court. At footnote 18

the court noted that the Southdown records were in the possession of Dr. Mikhail of the

Southdown Institute.   During oral argument at that hearing, attorney Sal Cognetti assured

the court that every effort had been made to obtain those records from Dr. Mikhail but that

the doctor was refusing to send the records to the court.   The court's Opinion refers to

correspondence between Mr. Cognetti and Dr. Mikhail.   However, contrary to Federal

Civil Rule 5, Mr. Cognetti did not copy this correspondence to opposing counsel, and has

not copied that correspondence to this date.

After the court's ruling, counsel for Plaintiffs retained a Canadian attorney, Mr.

Andrew Kerr, for the purpose of having Fr. Ensey's Southdown records subpoenaed and

sent to this court.   Mr. Kerr served his Canadian application upon counsel for Fr. Ensey

and Urrutigoity.   Fr. Ensey subsequently obtained a Canadian attorney, Mr. Andrew

MacDonald, to fight the production of these records to this court.   Attached hereto as

Exhibit 'A' is a letter from Fr. Ensey's Canadian attorney to plaintiffs' Canadian attorney.

The letter not only obstructs the production of Fr. Ensey's records, but even threatens the

imposition of costs and attorney fees against Plaintiffs for seeking the records.

Fr. Ensey's conduct flies in sharp contrasts to the assurances of his attorney, Sal

Cognetti, that he had attempted to have the Southdown Institute send his psychological

records to this court.   Accordingly, Fr. Ensey should be sanctioned.   Because the conduct

involves an already pending order, Plaintiffs request that Fr. Ensey's Answer in this case

be stricken.

Dated this 20th day of August, 2004.

James Bendell, WSBA # 20820
Co-counsel for Plaintiffs

I certify that I caused a true copy of this pleading
to be sent my electronic mail to Joseph Leeson,
Joseph O'Brien on Sal Cognetti on 8/20, 2004.

PLAINTIFFS' MOTION FOR SANCTIONS - 2

# Markson MacDonald
*The Barristers Group*

August 12, 2004

**BY FAX  1 (705) 725-7359**

**MCCARTHY RASTIN KERR**
Trial Lawyers
48 Alliance Boulevard
Suite 201A
Barrie, Ontario
L4M 5K3

## ATTN: ANDREW R. KERR

Dear Mr. Kerr:

### RE: FATHER ENSEY

I acknowledge receipt and thank you for a copy of the Application Record. I note certain
deficiencies in the manner in which this matter has proceeded as follows:

1.  The Notice of Application makes reference to an Order of Judge Jones dated
    December 3, 2004. Accepting that this is a typographical error I do not see in
    the materials an Order that corresponds to the relief being sought in the
    Application namely the production of extensive detailed documentation from
    The Southdown Institute. In short the "psychological and psychiatric records
    at issue" referred to in the December 11, 2003 Order that you rely upon falls
    disturbingly short of the relief you are now seeking.

2.  Under Rule 39.01(5) an affidavit for use on an Application may contain
    statements of the Deponent's information and belief with respect to facts that
    are **not contentious**, if the source of information and the fact of the belief are
    specified in the affidavit. The subject matter of your Application is a lawsuit
    between John Doe, John Doe Senior and Jane Doe and various defendants in
    the Middle District of Pennsylvania. The whole subject matter of that lawsuit
    is contentious in that it is still being litigated. The allegations set out in the
    complaint at exhibit "A" to the affidavit of Jennifer Donnelly have been
    defended. Why a complete copy of the pleadings is not included in your
    application record is unclear; they should be. Given that the issues raised in
    the December 11, 2003 and March 11, 2004 Orders are under appeal
    (discussed further below) this underscores the contentious nature of these

Suite 1905
120 Adelaide Street West
Toronto, Ontario M5H 1T1

T.   416 366-0044
F.   416 366-5845

issues. Accordingly the affidavit of Jennifer Donnelly is not permitted by the Rules on an application of this nature. In summary Jennifer Donnelly cannot make an affidavit in the capacity of a law clerk for a Canadian law firm based on information and belief received from Mr. James Bendell.

3. In paragraph 1 of the affidavit of Jennifer Donnelly it says that McCarthy Rastin Kerr act for one of the Applicants "Jane Dane". While one presumes this is a typographical error as well it underscores that Ms. Donnelly may well have absolutely no information about who John Doe, John Doe Senior and Jane Doe are. This is further supported by the letter of McCarthy Rastin Kerr dated July 21, 2004 which indicates "we have been retained by Mr. James Bendell ...to bring an application in Ontario against The Southdown Institute". (Tab J)

4. In the footnote to the December 11, 2003 Order that apparently Ms. Donnelly is relying upon (Tab F) it indicates that counsel for the Plaintiffs were to "refrain from filing additional personal affidavits without seeking prior leave of court". Where in your materials does it indicate that Judge Jones gave leave for an affidavit to be filed in Canada exposing the Defendants in the Pennsylvania action to public scrutiny based on information obtained in the context of depositions equivalent to our examinations for discovery. Is it your position that the principle of the deemed undertaking rule in Rule 30.1 ought not to apply in respect of Deponents that are examined out of this jurisdiction?

5. As I indicated to you in a previous letter, the March 23, 2004 Order also included in your materials is now under appeal through the Third Circuit Court of Appeal dealing with the issue of the discoverability of psychological reports of Father Urrutigoity. Father Ensey is a named Appellant as well. The Order issued by Judge Jones granting leave to appeal his March 23, 2004 Order was issued on June 15, 2004. Given that the affidavit of Jennifer Donnelly was sworn on July 28, 2004 would you please explain why the fact that Judge Jones' March 23, 2004 Order is under appeal was not disclosed to Judge Brown in your materials and/or brought to His Honour's attention when this matter was first spoken to by you. This seems to be a strong ground in and of itself for striking the affidavit of Jennifer Donnelly. Please also have reference to Rule 39.01(6) which indicates that where a Motion or Application is made without notice, the Moving Party or Applicant shall make full and fair disclosure of all material facts, and failure to do so is in itself sufficient ground for setting aside any Order obtained on the Motion or Application. The Notice of Application in question was not served upon Father Ensey and on its face is misleading as it makes reference to an Order that does not exist namely the "December 3, 2004" Order of Judge Jones. Your obligation was to make full and fair disclosure. Apparently this was not done.

6. Jennifer Donnelly as far as I can gather from her affidavit is not an expert in Pennsylvania law and for her to be basing her affidavit on "pleadings and other court documents, including exhibits, filed in support of motions in the Pennsylvania action" is of little service to a Judge in Ontario hearing this kind of Application. Her information and belief is not much use as to how contentious issues stand in the U.S. proceeding.

7.      The protocol for obtaining discovery of a Canadian resident in the context of a
        U.S. action is by way of Letters Rogatory. The case law abounds with respect
        to this protocol. This protocol would avoid the very situation we find
        ourselves in: your law firm is attempting to argue U.S. law based on an
        affidavit of an Ontario resident law clerk with apparently no Pennsylvania law
        qualifications on behalf of 3 unidentified Applicants based on an incomplete
        record of what is actually happening in Pennsylvania. The only person who
        can make the request to the Canadian court for the records you are seeking is
        Judge Jones.

8.      There is no unequivocal Order of the U.S. court that directs The Southdown
        Institute to produce any of its records. There is no unequivocal Order of the
        court that directs Father Ensey to consent to the production of The Southdown
        Institute records concerning him. There is no unequivocal Order directing
        Father Urrutigoity to grant his consent to produce records pertaining to him
        from The Southdown Institute. In respect of both Father Urrutigoity and
        Father Ensey the very discoverability of any of the records of The Southdown
        Institute is contentious given it is a live issue currently in the United States
        Court of Appeal for the Third Circuit.

9.      An Ontario Court has no jurisdiction to order what you are seeking based on
        the record relied upon.

Now that Father Ensey has obtained a notice of the Application and given that he
resides outside of Ontario it is in his rights to bring a Motion under Rule 17.06(1)
before delivering a Notice of Appearance to stay the proceedings. I also anticipate
being retained by Father Urrutigoity who will likely join in the motion.

I will await your response to the above deficiencies failing which I will schedule a
Motion to stay the Application that you have brought based on the deficiencies that I
have outlined.

In the event that Father Ensey and/ or Father Urrutigoity is forced to bring the Motion
contemplated above we will of course rely upon this letter when the issue of costs are
addressed. In the circumstances we have no choice but to ask for costs against your
firm given that the Applicants are unidentified and they are residents of the United
States. It may be that we will receive instructions to seek security for costs against
Mr. Bendell and/ or the Applicants in advance of bringing our Motion under Rule
17.06, unless your client(s) agree to post security.

I have consulted with the Newmarket Court and have identified September 7, 2004 as
a date upon which our Motion to stay and your Application if it is permitted to
proceed could be heard. This would not be a special appointment and so we would be
subject to the number of cases on the docket on that particular date. I would suggest
that if we are forced to proceed, we obtain a special appointment given that the issues
and the law involved in this matter will likely require us to spend at least 4 hours on
the Motion.

4

My client is particularly distressed that you would in essence breech the spirit of the
deemed undertaking rule in Canada by including in the materials that you have filed
very personal and private documents relating to the United States lawsuit including
transcripts of depositions which are of a particularly embarrassing nature. These are
now public documents. To do so without including even the Statement of Defence
indicating that all of the allegations are defended is shocking. All of this could have
been avoided by seeking Letters Rogatory from Judge Jones. I trust that when you
explain the nature of our Rules and the way litigation is conducted in this Province
you will be able to convince Mr. Bendell and the unidentified Applicants to withdraw
this application as presently constituted. They are clearly trying to do through the
backdoor what they have not been able to do through the front. I await your earliest
response.

If I am forced to prepare Motion materials there will obviously be cost consequences,
so may I please hear from you by 12:00 pm **Friday, August 13, 2004** at the **latest.**

Yours very truly,

**Markson MacDonald**

Andrew J. MacDonald

AJM/hf